LEOPOLD LAPIDUS, Appellant-Respondent, v NEW YORK CITY CHAPTER OF THE NEW YORK STATE ASSOCIATION FOR RETARDED CHILDREN, INC., et al., Respondents-Appellants.

First Department, June 26, 1986

APPEARANCES OF COUNSEL

*David I. Rosen* of counsel *(Clifton Budd Burke & DeMaria,* attorneys), for respondents-appellants.

*Stanford M. Singer* of counsel *(Abrams Lerner Kisseloff Kissen & Lapidus, P. C.,* attorneys), for appellant-respondent.

**OPINION OF THE COURT**

SULLIVAN, J.

Plaintiff was hired as the controller of the New York City Chapter of the New York State Association for Retarded Children, Inc. (Association), on or about October 15, 1974 by its then executive director, I. Joseph Harris. According to plaintiff, Harris assured him that it was the Association's long-standing policy to dismiss employees only for cause and that an elaborate grievance procedure was available to all employees.

More specifically, Harris informed plaintiff that managerial employees were afforded all the benefits to which union employees were entitled, as set forth in their collective bargaining agreement, including those benefits having to do with dismissal and termination. As explained by Harris, who has confirmed that he negotiated such an agreement with plaintiff on behalf of the Association, these benefits also included salary increases based on job performance and other accoutrements to which union employees were not entitled. According to plaintiff, Harris reduced the terms of the hiring to a writing, which he signed and supposedly filed in plaintiff's personnel file. The writing itself, however, could not be found in the Association's files, and, despite a discovery notice therefor, was never produced, although a June 4, 1975 Associ-

ation memorandum refers to an "initial hiring agreement 10/15/74".

According to plaintiff, who had been unemployed at the time the Association hired him, he had been actively seeking employment with several firms. Since job security was one of his priorities, he had passed up several opportunities, including one at a higher starting salary as a senior accountant with Clarance Rainess & Co., because the other offers could not match the Association's in that regard.

Plaintiff alleges that during the course of his employment with the Association, Michael Goldfarb, who became its executive director in September 1975, made disparaging comments about the older employees on several occasions. These included the expression of a desire to reorganize the Association, so as to bring in "young blood", and an observation that too many of the department heads were over 50 years of age.

On May 25, 1983, after having earlier that month expressed some dissatisfaction with plaintiff's job performance, Goldfarb summoned him to his office and notified him that he was being relieved of his duties as controller and discharged. After contemplating the offer overnight, plaintiff accepted the option tendered him of resigning his employment in exchange for a separation package which, *inter . alia,* included three months' severance pay. Although refusing to sign a proffered form of agreement conditioning such severance pay upon a purported voluntary resignation, plaintiff submitted a letter, dated May 26, 1983, stating, "I hereby resign my position as controller effective today." On June 23, 1983, the Association filed a report of employment with the New York State Department of Labor, noting plaintiff's discharge because of a "reorganization". In addition to the severance payments, the Association continued to provide plaintiff with health insurance until April 1, 1984.

■ ■ On or about July 23, 1983, plaintiff commenced this action, seeking damages from both the Association and Goldfarb for breach of an employment agreement, intentional infliction of emotional distress, and age discrimination in violation of Executive Law article 15, known as the Human Rights Law. After joinder of issue, the Association and Goldfarb moved for summary judgment dismissing the complaint. Special Term dismissed the causes of action for breach of employment contract and intentional infliction of emotional distress, but denied the motion as to the cause of action for

age discrimination. After the parties had filed their respective notices of appeal and cross appeal, the Association and Goldfarb moved for renewal and reargument. Plaintiff cross-moved for similar relief, seeking reinstatement of the two dismissed causes of action. Special Term granted defendants' motion for reargument and dismissed the age discrimination cause of action as against Goldfarb but denied the cross motion, from which disposition plaintiff has appealed. Thus, the only claim surviving in the complaint is the age discrimination cause of action against the Association. We reinstate the breach of employment contract cause of action as well as the cause of action against Goldfarb for age discrimination.

■ Special Term dismissed the contract action on the ground that plaintiff failed to establish sufficiently his reliance on the representations made on behalf of the Association at the time he was first hired, thereby distinguishing the instant case from *Weiner v McGraw-Hill, Inc.* (57 NY2d 458). *Weiner* is notable because it sets forth an exception to the general rule in New York, enunciated in *Martin v New York Life Ins. Co.* (148 NY 117), that an employment for an indefinite term is presumed to be a hiring at will. *Weiner* held that, upon an appropriate evidentiary showing, a limitation on the employer's right of termination could be imported into an employment of indefinite duration. Included in the proofs there was an express provision in the employer's handbook on personnel policies and procedures limiting its right to dismiss to "just and sufficient cause only". In such a case, where the limitation is implied, reliance is, of course, a necessary element. Here, however, plaintiff's contract claim is based upon a writing, allegedly signed on behalf of the Association by its then executive director, I. Joseph Harris, which, according to plaintiff, expressly incorporated by reference the rights accorded union employees under their union contract, including, without limitation, those involving discharge or termination. Thus, in the face of an express promise, the issue of reliance becomes irrelevant.

■ That plaintiff could not produce the written employment contract upon which he relies is not fatal to his claim. Since the record contains sworn testimony showing the existence of such a document and that it was in the possession of the Association, which was duly served with a notice to produce and has failed to do so, plaintiff may offer secondary evidence establishing its contents. *(Dependable Lists v Malek,* 98 AD2d

679; *Brownlee v Hot Shoppes,* 23 AD2d 848; Richardson, Evidence § 599 [10th ed].)

■ Through his own sworn deposition testimony and affidavit, corroborated, in part, by Harris' affidavit and a copy of an Association internal memorandum referring to the employment agreement of October 15, 1974 which "specifies automatic increases * * * of base pay", plaintiff made a more than adequate factual showing of a written employment agreement providing for discharge only for cause. Another memorandum, dated November 3, 1982, from Goldfarb to "all department heads" also confirmed the Association's policy of extending all union benefits to nonunion employees. Thus, at the very least, on this record, the issue of the existence of a written contract of employment, and its contents, presents a question of fact. By viewing the breach of contract claim as one that had to fall strictly within the factual pattern of *Weiner (supra),* Special Term denied plaintiff the opportunity at trial of proving an express agreement not to discharge him except for cause.

Moreover, and in any event, plaintiff also essentially established the same set of circumstances relied upon in *Weiner (supra)* as evidencing an implied limitation of the employer's right of termination, in derogation of the presumed at-will employment, in a hiring for an indefinite term. In holding that the existence of such a limitation turned on the totality of circumstances, the court there cited as significant the following four factors: the employee was induced to leave his prior employment with the assurance he would not be dismissed without just cause; the presence of a statement in the employment application that the employee would not be dismissed without just cause; his rejection of other employment opportunities in reliance on these assurances and the existence of an employer's personnel manual expressly stating that dismissal would be only for just cause and only after rehabilitative efforts had failed. While plaintiff does not assert that he left prior employment on the basis of the Association's promise of job security, he does allege that he foresook other job opportunities in reliance thereon. Similarly, while there was no employment application or personnel manual, the Association's union contract, the benefits of which applied to nonunion employees as well, not only sets forth the principle of termination for cause, but also includes the grievance machinery for breach by the employer. Thus, in many ways the facts here parallel those in *Weiner.*

Generally speaking, those cases which have refused to apply *Weiner (supra)* fall into three categories: those where there was either no personnel manual, or similar writing, or if there was one, it failed to set forth any provisions governing discharge *(see, e.g., Patrowich v Chemical Bank,* 98 AD2d 318, *affd* 63 NY2d 541; *Sabetay v Sterling Drug,* 114 AD2d 6; *O'Connor v Eastman Kodak Co.,* 108 AD2d 843; *affd* 65 NY2d 724; *Toshiba Am. v Simmons,* 104 AD2d 649); those where the employee was unaware of the personnel manual at the time of hiring *(see, e.g., Rizzo v International Brotherhood of Teamsters,* 109 AD2d 639); and those where there was not even an allegation of reliance on a personnel manual or any other employer representation of termination for just cause only, and no claim whatever of having turned down other employment opportunities in reliance on such representation *(see, e.g., O'Donnell v Westchester Community Serv. Council,* 96 AD2d 885; *Utas v Power Auth.,* 96 AD2d 940, *lv denied* 61 NY2d 601). Plaintiff's claim suffers from none of these defects.

The Association and Goldfarb, citing *Murphy v American Home Prods. Corp.* (58 NY2d 293), insist, however, that *Weiner (supra)* is restricted to its specific facts. We cannot agree. Initially, we note that *Murphy* did not involve facts establishing an implied, much less an express, contractual limitation on the employer's right of discharge. The plaintiff there could not bring himself within the *Weiner* exception because he could not point to any express limitation on the employer's right of termination in its personnel manual or elsewhere.

In any event, *Weiner* should not be interpreted as limiting its holding to its specific facts, especially in light of the court's formulation of a "totality of circumstances" test (57 NY2d, at p 467). As the Court of Appeals for the Second Circuit noted in *Gorrill v Icelandair/Flugleidir* (761 F2d 847, 853), "If *Weiner* stands for anything, it stands for the proposition that the merits of a claim alleging breach of an employment contract are not to be determined by application of a formula or checklist; instead, the totality of facts giving rise to the claim must be considered." In our view, applying the totality of circumstances standard, a triable issue of fact is presented as to whether the contents of the union contract regarding dismissal and termination and the testimonial and written references to its applicability to nonunion employees such as plaintiff, as well as the allegations of reliance, created an implied promise precluding a termination without cause. While Special Term found that plaintiff had failed to establish

a factual issue as to reliance, his deposition testimony alone, even without his documentary evidence, was sufficient on that score. Any issue as to credibility or the sufficiency of plaintiff's testimony is for the trier of the facts.

■ The Association and Goldfarb also argue that plaintiff's one-line resignation letter estops him from asserting a breach of employment contract claim. Although Special Term did not pass on this issue, it is advanced on appeal as an alternate ground to sustain dismissal of the contract action. Where, as here, the employee, on a motion for summary judgment, has submitted proof that, although given a choice as to the form which his termination would take, he was nonetheless discharged, and the employer, on the other hand, claims that the employee exercised an option to resign, an issue of fact is presented. *(Levitz v Robbins Music Corp.,* 6 AD2d 1027.)

In this regard we take note of plaintiff's claim that he refused to sign an agreement expressly conditioning the acceptance of severance pay upon a voluntary resignation. Nor can the mere acceptance itself of severance pay constitute a waiver, since the one month's pay in lieu of notice of termination and two months' severance is precisely what plaintiff would have been entitled to receive under the union contract in the first instance. Significantly, the union contract specifically precludes severance pay for employees discharged for cause.

Similarly, at Special Term, the Association and Goldfarb cited plaintiff's failure to invoke the union contract's grievance mechanisms. According to plaintiff, he was, without any prior notice, relieved of his duties as controller and discharged. Whether in such circumstances the Association would have participated in a grievance is highly questionable. A party is not required to follow a procedural route when to do so would be an obvious exercise in futility. *(Engelhardt v Consolidated Rail Corp.,* 594 F Supp 1157, 1167-1168, n 9, *affd* 756 F2d 1368; *see also, Woodley v Butler,* 101 Misc 2d 670, *appeal dismissed* 75 AD2d 756.)

■ We agree with Special Term's conclusion that the intentional tort cause of action is without merit and should be dismissed. A cause of action for intentional infliction of emotional distress will not lie unless the offending conduct, even though intentional or reckless, is extreme and outrageous and causes severe emotional distress. The wrongdoer's actions must be " 'so outrageous in character, and so extreme in

degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community' ". *(Fischer v Maloney,* 43 NY2d 553, 557, citing Restatement [Second] of Torts § 46 [1] comment *d.)*

Taking the version of the facts most favorable to plaintiff, and even ignoring Goldfarb's testimony to the contrary, plaintiff's claims fall far short of meeting such a stringent standard. The claim of "humiliation" is based solely on his assertions that he was "thrown out in the middle of a working day and told not to go back to [his] office, and everyone knew it within five minutes in the whole organization". He also claims that he was humiliated "by continued repetition" among his peers throughout the State "of what was done to [him]." As a result, plaintiff alleges, he suffered mental depression, and is still in "a state of shock". Allegations such as these do not give rise to a cause of action for intentional infliction of emotional distress.

In *Murphy v American Home Prods. Corp.* (58 NY2d 293, *supra),* the plaintiff, in support of his intentional infliction of emotional distress claim, alleged that his termination "was deliberately and viciously insulting, was designed to and did embarrass and humiliate [him] and was intended to and did cause [him] severe mental and emotional distress thereby damaging [him]" *(supra,* at p 298). He claimed that someone had broken into his desk, that he had been escorted from the building by guards and that his belongings were dumped onto the street. The court dismissed the claim nevertheless, ruling that the allegations as to the manner of plaintiff's dismissal fell far short of the strict standard New York imposes upon such a claim. *(See also, O'Donnell v Westchester Community Serv. Council,* 96 AD2d 885, *supra* [the plaintiff's cause of action for intentional infliction of emotional distress for the "anxiety, humiliation and indignities" allegedly arising from his termination of employment could not be maintained since he had failed to allege that the defendant's conduct was extreme and outrageous or that it exceeded all bounds usually tolerated by a decent society]; *Brinks, Inc. v City of New York,* 533 F Supp 1123, 1125 [the plaintiff's intentional infliction of emotional distress claim dismissed notwithstanding his allegations that he suffered "severe emotional distress" after he was demoted, harassed, and subjected to verbal abuse].) The same result is dictated here. In this regard it is also significant that in *Murphy* the court, noting its holding that New York does not recognize tort liability for abusive or wrongful discharge,

stated: "plaintiff should not be allowed to evade that conclusion or to subvert the traditional at-will contract rule by casting his cause of action in terms of a tort of intentional infliction of emotional distress" (58 NY2d, at p 303).

In dismissing, on renewal and reargument, the age discrimination cause of action against Goldfarb, Special Term relied upon *Patrowich v Chemical Bank* (63 NY2d 541, *supra),* which held that a corporate employee, even if an officer or manager, is not individually subject to suit with respect to age discrimination under the New York Human Rights Law (Executive Law art 15) or Labor Law § 194 if such officer or manager "is not shown to have any ownership interest or any power to do more than carry out personnel decisions made by others" *(supra,* at p 542). Plaintiff distinguishes *Patrowich* by noting that Goldfarb was personally charged with hiring and firing and thus did more than carry out personnel decisions made by others. As for the merits, plaintiff alleges that during the course of his employment with the Association, Goldfarb, then in his 30's or early 40's, made several comments disparaging older employees of the Association. These included the expression of a desire to reorganize the Association, so as to bring in "young blood", and an observation that there were too many department heads in the Association over 50 years of age. At the very least, these allegations create an issue of fact as to whether Goldfarb and the Association unlawfully discriminated against plaintiff because of his age. Thus, the cause of action against Goldfarb individually for age discrimination should not have dismissed.

Accordingly, the appeal from the order of the Supreme Court, New York County (Robert White, J.), entered June 13, 1985, should be dismissed as superseded. The order of the same court and Justice, entered September 30, 1985, which, *inter alia,* granted defendants' motion for reargument and, upon reargument, dismissed the third cause of action against defendant Goldfarb should be modified, on the law, to reinstate the first cause of action and the third cause of action against defendant Goldfarb and, except as thus modified, affirmed, without costs or disbursements.

KUPFERMAN, J. P., ROSS, FEIN and ELLERIN, JJ., concur.

Order, Supreme Court, New York County, entered on September 30, 1985, unanimously modified, on the law, to reinstate the first cause of action and the third cause of action against defendant Goldfarb and, except as thus modified,

affirmed, without costs and without disbursements, and the order of said court, entered on June 13, 1985 is unanimously dismissed as having been subsumed in the appeal from the order entered on September 30, 1985.