**Cynthia Grantham WRIGHT,
Plaintiff-Appellant,**

v.

**Peter J. CAYAN, Individually and as President of the State University of New York College of Technology, Defendant-Appellee.**

**No. 526, Docket 86–7775.**

United States Court of Appeals,
Second Circuit.

Argued Dec. 10, 1986.

Decided May 4, 1987.

Daniel S. Cohen, Utica, N.Y., for plaintiff-appellant.

Judith I. Ratner, Asst. Atty. Gen., State of N.Y. (Robert Abrams, Atty. Gen., State of N.Y., Peter H. Schiff, Deputy Sol. Gen., Nancy A. Spiegel, Asst. Atty. Gen., State of N.Y., Albany, N.Y., of counsel), for defendant-appellee.

Before KAUFMAN, TIMBERS and MAHONEY, Circuit Judges.

MAHONEY, Circuit Judge:

Plaintiff-appellant Cynthia Grantham Wright appeals from a grant of summary judgment, 642 F.Supp. 947, to defendant-appellee Peter J. Cayan in an action under 42 U.S.C. § 1983 (1982) for deprivation of Wright's property right in her employment by the state. Specifically, Wright argues that she should not have been dismissed from her job without cause and a hearing. We affirm.

### I.

Wright was hired by William R. Kunsela, then president of the State University of New York College at Utica/Rome.[1] Her job classification under the civil service law was "secretary to the president," an exempt class position from which the employee is terminable at will, *see* N.Y.Civil Service Law §§ 41 and 75 (McKinney 1983 &

---

1. The name of the college was subsequently changed to the State University of New York College of Technology.

Supp.1987), and she commenced her employ in that position on or about April 16, 1973. On August 14, 1973, Robert J. Kopecek, vice president for administration, wrote Wright a letter confirming her employment and listing the conditions of employment. The letter states in part:[2]

> I am pleased to confirm your permanent appointment as the President's Secretary....

> .    .    .    .    .

> 3. The occupant of the position serves at the pleasure of the supervisor for the first two (2) years.

> 4. Under the Classified Rules of Civil Service, the occupant of the position serves a probationary period of between eight (8) and twenty-six (26) weeks....

On November 9, 1973, Kopecek wrote a letter to Wright which stated:

> I am pleased to inform you that your probationary period has been satisfactorily completed, and that your permanent appointment as President's Secretary, SG–15, at the University College at Utica/Rome is now confirmed.

Wright worked harmoniously with Kunsela for his entire tenure at the college.

In July 1982, Kunsela retired and was replaced as president by the defendant, Peter J. Cayan. Wright continued in her position as secretary to the president. While the working relationship between the two was initially cordial, it soon began to deteriorate, allegedly caused by Wright's rebuff of Cayan's sexual advances.

Wright continued as secretary to Cayan for two years. In July 1984, she received written notice from Cayan that she was to be dismissed effective October 19, 1984. Upon inquiry, the sole reason given by Cayan for dismissal was "incompatibility."

Wright brought this suit, claiming that her property right in continued employment had been deprived without due process because no notice of or cause for her dismissal was given and no hearing was held. The property right was based upon the letter of August 14, 1973. She contended that paragraph three, the sentence stating that she would serve at the pleasure of her supervisor for two years, implies that after that time she could be dismissed only for cause and after notice and a hearing. Cross-motions for summary judgment were filed, which Judge Neal P. McCurn, Northern District of New York, denied because, in his view, the language of the letter was reasonably susceptible of the plaintiff's interpretation. He held that the case should proceed to trial. The deposi-

**2.** Because of the importance of this letter in this case, we set it out in full here:

Dear Mrs. Wright:
I am pleased to confirm your permanent appointment as the President's Secretary, SG–15, with the State University College at Utica/Rome effective April 16, 1973. Your annual salary for this position will be $10,089, subject to such changes as may be required by law.

As you know, this position has the following characteristics and specific conditions of employment;
1. It is a classified position, but it is not subject to competitive Civil Service examination.
2. It is in the Management/Confidential category and, therefore, cannot be occupied by an individual who belongs to the Civil Service Employee's Association. This means further that the individual so employed may not participate in any of the specialized benefits extended to a CSEA member such as the purchase of Group Life Insurance.
3. The occupant of the position serves at the pleasure of the supervisor for the first two (2) years.
4. Under the Classified Rules of Civil Service, the occupant of the position serves a probationary period of between eight (8) and twenty-six (26) weeks.

If you wish to accept this appointment, please sign and date the endorsement on the enclosed copy of this letter and return that copy to my office.

We trust you will find working for the College to be an interesting and rewarding experience.

If you have any questions, please see me.
Sincerely,
Robert J. Kopecek
Vice President, Administration

tions of Kunsela and Wright were thereafter taken.

■ The case was reassigned to Judge McAvoy, and defendant resubmitted a motion for summary judgment. Judge McAvoy granted the motion because, in his view, the evidence produced by Wright was insufficient to support her claim of a right to continued employment.[3]

## II.

Fed.R.Civ.P. 56(c) provides that summary judgment should be granted if "there is no genuine issue as to any material fact." "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* —— U.S. ——, ——, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original). Whether facts are material will be determined by substantive law. *Id.*

The fourteenth amendment guarantees that no person may be deprived of property without due process of law. Property interests protected by that amendment in turn are created and defined "by existing rules or understandings that stem from an independent source such as state law." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *see Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985). Moreover, the individual must have a legitimate claim of entitlement to the property, rather than a unilateral expectation of it. *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709. Accordingly, the question presented here is whether plaintiff had a contract right to be dismissed only for cause and after a hearing under New York law.

Generally under New York law, unless the duration of an employment contract is set forth explicitly, the employment is at will and can be terminated by either party at any time. *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 448 (2d Cir.1980); *Hunnewell v. Manufacturers Hanover Trust Co.,* 628 F.Supp. 759, 762 (S.D.N.Y.1986); *Murphy v. American Home Products Corp.,* 58 N.Y.2d 293, 304–05, 448 N.E.2d 86, 91, 461 N.Y.S.2d 232, 237 (1983); *Tyson v. Hess,* 109 A.D.2d 1068,

---

**3.** Judge McAvoy was presented with and rejected, on the basis that discovery had since been completed and the case was ready for trial, the argument that Judge McCurn's earlier denial of summary judgment was the "law of the case," precluding Judge McAvoy's consideration of the issue. Judge McCurn specifically held in the earlier ruling, however, that plaintiff had shown a genuine disputed issue of material fact, and stated that "we will proceed to trial in the case." On these facts, his denial of summary judgment was the law of the case. *See Middle Atlantic Utilities Co. v. S.M.W. Development Corp.,* 392 F.2d 380, 384 (2d Cir.1968). No change in the law or facts warranted Judge McAvoy's "overruling" of Judge McCurn's previous holding that the letter was sufficient to preclude summary judgment. *Compare id.* On the other hand, it is clear that a second judge has the power to grant summary judgment despite another judge's previous denial of summary judgment. *See Slotkin v. Citizens Casualty Co. of New York,* 614 F.2d 301, 312 (2d Cir.1979), *cert. denied,* 449 U.S. 981, 101 S.Ct. 395, 66 L.Ed.2d 243 (1980); *Dictograph Products Co. v. Sonotone Corp.,* 230 F.2d 131,

134–36, *reh'g denied,* 231 F.2d 867 (2d Cir.) (per curiam), *petition for cert. dismissed per stipulation,* 352 U.S. 883, 77 S.Ct. 104, 1 L.Ed.2d 82 (1956). Moreover, it would be self-defeating to reverse a correct ruling by the second judge solely because of a departure from the law of the case. 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4478, at 794–95 (1981 & Supp.1986). Recognizing the general rule in this circuit that judges of coordinate jurisdiction may disregard each others' rulings, so long as the party relying on the previous ruling is not prejudiced, *see United States v. Birney,* 686 F.2d 102, 107 (2d Cir.1982); *First National Bank of Hollywood v. American Foam Rubber Corp.,* 530 F.2d 450, 453 n. 3 (2d Cir.), *cert. denied,* 429 U.S. 858, 97 S.Ct. 157, 50 L.Ed.2d 135 (1976), we reiterate that the rule also dictates a general practice of refusing to reopen what has been decided. *Slotkin,* 614 F.2d at 312; *Dictograph Products Co.,* 230 F.2d at 135–36; *see Erie Conduit Corp. v. Metropolitan Asphalt Paving Association,* 560 F.Supp. 305, 307–08 (E.D.N.Y.1983).

1069, 487 N.Y.S.2d 206, 207–08 (4th Dept 1985). In other words, a contract for an indefinite term is interpreted as continuous employment at will unless, as in any contractual situation, an express limitation on the right to terminate the employment is established. *See Murphy*, 58 N.Y.2d at 305, 448 N.E.2d at 91, 461 N.Y.S.2d at 237; *Arentz v. Morse Dry Dock and Repair Co.*, 249 N.Y. 439, 444, 164 N.E. 342 (1928); *see also Weiner v. McGraw-Hill, Inc.*, 57 N.Y.2d 458, 466, 443 N.E.2d 441, 446, 457 N.Y.S.2d 193, 198 (1982) (rebuttable presumption of at will employment if no definite term); J. Calamari & J. Perillo, The Law of Contracts § 2–13, at 48–49 (2d ed. 1977) (discussing issue).

■ Both the August 14, 1973 and November 9, 1973 letters stated that Wright had been accorded a "permanent appointment;" we agree with the district court that this falls well short of an express limitation upon the right to terminate. Nor is paragraph three of the earlier letter (which provided that plaintiff would serve "at the pleasure of the supervisor" for the first two years) on its face such a limitation.[4] The successful completion of the period of probation after eight to twenty-six weeks (as certified by the letter dated November 9, 1973) is not germane, because all civil service employees are required to undergo a probationary period, regardless of whether they will have "protected" employment upon its completion. *See Voorhis v. Warwick Valley Central School District*, 92 A.D.2d 571, 572, 459 N.Y.S.2d 325, 327 (2d Dept 1983); N.Y.Comp.Codes R. & Regs. tit. 4, § 4.5 (1969).

It could be argued that *Weiner* altered the New York rule that some sort of express limitation must exist, when it noted that in deciding whether the presumption of at will employment is overcome:

> the trier of the facts will have to consider the "course of conduct" of the parties, "including their writings" ... and their antecedent negotiations. Moreover, ... it is not [the employer's] subjective intent, nor "any single act, phrase or other expression", but "the totality of all of these, given the attendant circumstances, the situation of the parties, and the objectives they were striving to attain", which will control.

57 N.Y.2d at 466–67, 443 N.E.2d at 446, 457 N.Y.S.2d at 198 (citations omitted) (quoting *Brown Brothers Electrical Contractors, Inc. v. Beam Construction Corp.*, 41 N.Y.2d 397, 399–400, 361 N.E.2d 999, 1001, 393 N.Y.S.2d 350, 351–52 (1977)).

However, in the more recent case *Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 448 N.E.2d 86, 461 N.Y.S.2d 232 (1983), the Court of Appeals reviewed current New York law and concluded:

> [A]bsent a constitutionally impermissible purpose, a statutory proscription, or an express limitation in the individual contract of employment, an employer's right at any time to terminate an employment at will remains unimpaired.

> Of course, if there were an express limitation on the employer's right of discharge it would be given effect even though the employment contract was of indefinite duration. Thus, in *Weiner v. McGraw-Hill, Inc.*, 57 N.Y.2d 458, 457 N.Y.S.2d 193, 443 N.E.2d 441 [(1982)], cited by plaintiff, we recently held that,

---

4. Judge McAvoy's opinion dealt only with the "permanent appointment" language, and omitted any consideration of the statement that Wright would serve "at the pleasure of the supervisor" for two years. Wright contends that the latter language necessarily implies that after two years, she assumed a new status which precluded dismissal without stated cause and a hearing. Although, for the reasons hereinafter stated, we do not agree, this is clearly her stronger argument, especially since the announcement of a "permanent appointment" in

the letter dated August 14, 1973 was coupled with statements that Wright would serve "at the pleasure of the supervisor for the first two (2) years" and would also serve "a probationary period of between eight (8) and twenty-six (26) weeks," and the identical announcement in the November 9, 1973 letter, although coupled with the advice that Wright's probationary period had been successfully completed, obviously occurred in the continuing context of service "at the pleasure of the supervisor."

on an appropriate evidentiary showing, a limitation on the employer's right to terminate an employment of indefinite duration might be imported from an express provision therefor found in the employer's handbook on personnel policies and procedure. Plaintiff's attempts on this appeal to bring himself within the beneficial scope of that holding must fail, however. There is here no evidence of any such express limitation. Although general references are to be found in his brief in our court to an employer's "manual", no citation is furnished to any provision therein pertinent to the employer's right to terminate his employment....

58 N.Y.2d at 305, 448 N.E.2d at 91, 461 N.Y.S.2d at 237.

The plaintiff in *Weiner* had significantly more evidence than that discussed in *Murphy*. In *Weiner*, plaintiff showed McGraw-Hill's express promise not to discharge him without cause (which promise was incorporated into Weiner's employment application), Weiner's reliance on the promise in rejecting alternative offers of employment, an employee manual precluding discharge without just cause, and McGraw-Hill's past practice of adhering to the procedures in the manual. 57 N.Y.2d at 465–66, 443 N.E.2d at 445, 457 N.Y.S.2d at 197; *see also Lapidus v. New York City Chapter of the New York State Association for Retarded Children, Inc.*, 118 A.D.2d 122, 504 N.Y.S.2d 629 (1st Dept.1986).

New York courts have required an express limitation in the wake of *Weiner* and *Murphy. See, e.g., O'Connor v. Eastman Kodak Co.*, 65 N.Y.2d 724, 725, 481 N.E.2d 549, 550, 492 N.Y.S.2d 9, 10 (1985) (mem.); *Oakley v. St. Joseph's Hospital*, 116 A.D.2d 911, 913, 498 N.Y.S.2d 218, 219–20 (3d Dept.1986); *Wexler v. Newsweek, Inc.*,

109 A.D.2d 714, 716, 487 N.Y.S.2d 330, 331–32 (1st Dept.1985); *Rizzo v. International Brotherhood of Teamsters*, 109 A.D.2d 639, 641, 486 N.Y.S.2d 220, 221 (1st Dept.1985); *Tyson v. Hess*, 109 A.D.2d 1068, 1069, 487 N.Y.S.2d 206, 207–08 (4th Dept.1985). Federal decisions construing New York law are in accord. *See, e.g., Gianaculas v. Trans World Airlines, Inc.*, 761 F.2d 1391, 1393–94 (9th Cir.1985); *Gorrill v. Icelandair/Flugleidir*, 761 F.2d 847, 851–52 (2d Cir.1985); *Hunnewell v. Manufacturers Hanover Trust Co.*, 628 F.Supp. 759, 762 (S.D.N.Y.1986). See also *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 448 (2d Cir.1980), a decision of this court construing New York law which preceded *Weiner* and *Murphy*.

One New York case, however, *Tiranno v. Sears, Roebuck & Co.*, 99 A.D.2d 675, 472 N.Y.S.2d 49 (4th Dept.1984), suggests that an effective limitation may be implied rather than express. There, the plaintiff alleged that a term in an employee handbook that provided " '[t]he Company may terminate an individual's employment at any time that his/her work * * * does not measure up to Company standards,' " *id.* at 675, 472 N.Y.S.2d at 50, could be construed as a limitation on the employer's right to terminate. The Appellate Division agreed, because the clause indicated "objectivity in employee evaluation and termination." *Id.* Compare *Rizzo*, 109 A.D.2d at 641–42, 486 N.Y.S.2d at 221 (discovery denied as to employment manuals and the like which might limit employer's right to terminate, since employee had no knowledge thereof and therefore could not establish requisite reliance in any event);[5] *Patrowich v. Chemical Bank*, 98 A.D.2d 318, 322, 470 N.Y.S.2d 599, 603 (1st Dept.) (general policy statements and supervisory guidelines do not restrict employer's right to termi-

---

5. There would appear to be no reliance here. The letter of August 14, 1973 was sent to Wright approximately four months after she began working at the college, and she accordingly could not have relied upon it when accepting the position. *See Rizzo*, 109 A.D.2d at 641–42, 486 N.Y.S.2d at 221; *cf. Patrowich*, 98 A.D.2d at 323, 470 N.Y.S.2d at 603 (no reliance where

plaintiff failed to allege that she acted to her detriment because of her belief concerning the termination procedures). On the other hand, Wright testified in deposition that at her initial interview, Kunsela told her that she would serve at his pleasure during the first two years of employment, from which she deduced that she would have an enhanced status requiring cause

nate), *aff'd*, 63 N.Y.2d 541, 473 N.E.2d 11, 483 N.Y.S.2d 659 (1984) (per curiam). But see *Collins v. Hoselton Datsun, Inc.*, 120 A.D.2d 952, 503 N.Y.S.2d 203 (4th Dept. 1986) (mem.), where a clause entitled "Job Security" in the employee handbook stated:

> You are * * * assured of steady employment as long as you are performing well. We expect from each employee his untiring effort toward the fulfillment of our business objectives.

*Id.* at 952, 503 N.Y.S.2d at 204. The court held that this language was not susceptible of being interpreted as requiring just cause for termination, citing its prior opinion in *Tiranno. Id.*

The authority of *Tiranno v. Sears, Roebuck & Co.* is rather shaky, to say the least, in light of the same court's subsequent decision in *Collins v. Hoselton Datsun, Inc.* The provision invoked in *Tiranno*, furthermore, at least dealt directly with the subject of termination, unlike the letters involved here. In sum, we doubt that *Tirrano*, a ruling by an intermediate appellate court from which that court appears to have retreated substantially in *Collins,* is a significant gloss upon the requirement of an express limitation established by the Court of Appeals in *Murphy*; even if it is, it does not extend far enough to vest this plaintiff with a viable claim under New York law.

Under *Weiner*, finally, the parties' intentions and conduct are paramount. Wright has testified in deposition that at the time she accepted employment, she expected to have protected employment after two years because Kunsela told her that she could be dismissed at his pleasure in the first two years of employment. Deposition of Wright, dated November 6, 1985, at 23–24. The phrase "at the pleasure of the supervisor for the first two years," which was included in her letter of appointment dated

August 14, 1973 and presaged in her earlier interview by Kunsela, constitutes virtually Wright's entire case that a limitation should be implied.[6] No showing is made that others within the college in the same civil service category as Wright enjoyed the protections she claims to have, *see Weiner*, 57 N.Y.2d at 466–67, 443 N.E.2d at 445, 457 N.Y.S.2d at 197, or that the employer intended this result. She herself did not inquire further at her interview as to what the meaning of this statement was. Deposition of Wright, at 23. In short, Wright seeks to bring herself within *Weiner*'s rule calling for consideration of the totality of the situation, including the writings, negotiations and intentions of the parties, *Weiner*, 57 N.Y.2d at 466–67, 443 N.E.2d at 446, 457 N.Y.S.2d at 198, while ignoring *Weiner*'s admonition that a " 'single act, phrase or other expression' " should not control the question whether the employment is terminable at will. *Id.* at 467, 443 N.E.2d at 446, 457 N.Y.S.2d at 198 (quoting *Brown Brothers Electrical Contractors, Inc. v. Beam Construction Corp.*, 41 N.Y.2d at 400–01, 361 N.E.2d at 1001, 393 N.Y.S.2d at 352).

### III.

In conclusion, Wright's evidentiary showing is not adequate to establish a restriction on her employer's right to terminate her employment at will under New York law. Specifically, there was no genuine issue as to any material fact and the defendant was entitled to judgment as a matter of law within the meaning of Fed.R. Civ.P. 56(c). We do not reach the remaining grounds for affirmance urged by appellee. The judgment of the district court is accordingly affirmed.

IRVING R. KAUFMAN, Circuit Judge (dissenting):

---

for dismissal thereafter. Deposition of Wright dated November 6, 1985, at 23–24.

**6.** See *supra* note 5, with respect to the insubstantial assistance provided to Wright's case by

the use of the phrase "permanent appointment" in the letters dated August 14, 1973 and November 9, 1973.

I am in agreement with my colleagues in the majority that, under New York law, unless an employment is for a specified period, it is presumed to be an employment at will, and that, "absent a constitutionally impermissible purpose, a statutory proscription, or an express limitation in the individual contract of employment, an employer's right at any time to terminate an employment at will remains unimpaired." *Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 298, 448 N.E.2d 86, 91, 461 N.Y.S.2d 232, 237 (1983). I strongly disagree, however, that the statement in Robert Kopecek's August 14 letter that "the occupant of the position serves at the pleasure of the supervisor for the first two years" is not an express limitation on the university's right to terminate Ms. Wright.

Although my brothers never fully describe their view of what is an express limitation, apparently they believe that, for a restriction to be express, it must be explicit, definitive and unambiguous. Hence, on the theory that "serves at the pleasure of the supervisor for the first two years" is susceptible of more than one meaning, the majority concludes that the restriction on which the plaintiff relies is not express.

In my opinion, the decision in *Murphy* cannot bear the majority's interpretation. There, the plaintiff sued for breach of contract alleging that his discharge after twenty-three years was an act of bad faith. Completely lacking any evidence that the defendant had in fact agreed to restrict its right to terminate his employment, the plaintiff urged the court to impose a limitation as a matter of law, on the theory that in all contracts the law implies an obligation on the part of the parties to act fairly and in good faith.

The Court of Appeals dismissed the complaint. Recognizing that in certain circumstances an obligation of good faith may be implied, the court refused to supply such a covenant because it would be inconsistent with other terms of the parties' agreement. Since the contract specified an at will employment, and the law affords an employer in that relationship an unfettered right of discharge, the court reasoned, it would be incongruous to infer that the employer impliedly agreed to a provision which would be destructive of his right to terminate. Although the parties may by express agreement limit the employer's right of discharge, the court concluded, where there is no evidence of any express restriction the court will not imply one.

The salient distinction in the *Murphy* case, therefore, is between a restriction on an employer's discharge right that the parties actually bargained for and agreed to, *e.g.*, *Weiner v. McGraw-Hill, Inc.*, 57 N.Y.2d 458, 443 N.E.2d 441, 457 N.Y.S.2d 193 (1982), and, a restriction imposed on the parties by the courts as an estimation of what in all likelihood the parties would have agreed to had they addressed the matter during their negotiations, *e.g.*, *Wood v. Lucy, Lady Duff-Gordon*, 222 N.Y. 88, 118 N.E. 214 (1917), or as a means of advancing public policy goals, *e.g.*, *Monge v. Beebe Rubber Co.*, 114 N.H. 130, 133, 316 A.2d 549, 551 (1974).

Thus, where a plaintiff points to contractual language addressing the subject of the employer's right of discharge, it seems to me, then he or she has satisfied the express limitation requirement. *See Weiner*, 57 N.Y.2d at 458, 443 N.E.2d at 441, 457 N.Y.S.2d at 193 (statement in handbook on personnel policies that company will resort to dismissal only for cause which was incorporated by reference into the contract of employment satisfied the express limitation requirement). Conversely, where the plaintiff does not rely on any evidence of an actual agreement pertinent to the employer's termination rights, then summary judgment for the defendant is appropriate. *See Sabetay v. Sterling Drug Inc.*, 69 N.Y.2d 329, 506 N.E.2d 919, 514 N.Y.S.2d 209 (1987) (no express agreement where corporate documents relied on by plaintiff are not part of the employment contract); *Collins v. Holeston Datsun, Inc.*, 120 A.D.2d 952, 953, 503 N.Y.S.2d 203,

204 (4th Dept.1986) (no express limitation where the provision relied on does not address the subject of termination rights).

Applying this rule to the present case, I am convinced that Ms. Wright has demonstrated an express limitation on the university's right to discharge her. Without doubt, the August 14 letter from Robert Kopecek was part of the written employment contract. Indeed, that letter explicitly provided that "this position has the following characteristics and specific conditions of employment." Equally plainly, the statement that she would serve "at the pleasure of the supervisor for the first two years" addresses the subject of the university's right of termination.

Of course, as in any action based on an express agreement, to survive a motion for summary judgment, not only must the plaintiff point to some contractual language pertinent to the alleged breach, but that language must also be sensibly susceptible of the interpretation urged by the plaintiff. *See Tiranno v. Sears Roebuck & Co.*, 99 A.D.2d 675, 676, 472 N.Y.S.2d 49, 50 (4th Dept.1984) (statement that the company may terminate an individual's employment at any time his or her work does not measure up to company standards is susceptible of being interpreted as requiring just cause); *Collins*, 503 N.Y.S.2d at 204 (clause assuring employees of steady employment as long as they perform well is not susceptible of being interpreted as requiring just cause.)

Here, neither the university anywhere in its presentation nor my colleagues in their majority opinion proffer even a plausible suggestion of what "serves at the pleasure of the supervisor for the first two years" meant if it did not mean that, after the expiration of two years, Ms. Wright would no longer be subject to termination at the mere whim of her supervisor. I am not prepared to rule, therefore, that no reasonable fact-finder could attribute to the contract the same meaning as the plaintiff does.

Accordingly, I would reverse the district court's order granting summary judgment to the university and remand for a trial and a jury determination as to whether the language relied on by Ms. Wright means what she says it does.