**Buel SAULS, Plaintiff,**

v.

**UNION OIL COMPANY OF CALIFORNIA, d/b/a Unocal, and sometimes as Unocal 76, Defendant.**

**Civ. A. No. B–89–00764–CA.**

United States District Court, E.D. Texas, Beaumont Division.

Oct. 12, 1990.

---

Wayne Peveto, Orange, Tex., for plaintiff.

Stuart B. Johnston, Jr., Vinson & Elkins, Houston, Tex., for defendant.

## MEMORANDUM OPINION
## AND ORDER

COBB, District Judge.

Presently before the court is Defendant Union Oil Company of California's ("Unocal") second motion for partial summary judgment. Unocal seeks dismissal with prejudice of state law claims for intentional infliction of emotional distress and conspiracy to intentionally inflict emotional distress filed as part of the amended complaint of Plaintiff Buel L. Sauls, Jr. ("Sauls"). The events giving rise to this lawsuit occurred while Sauls was employed in the welding shop of Unocal's Beaumont, Texas refinery. This court has previously denied Unocal's first motion for partial summary judgment wherein the oil company sought dismissal with prejudice of Sauls' claim for violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e *et seq.* As will be fully set forth below, the court finds that it will hear Sauls' Texas common law tort claims and that there exist in the record genuine is-

sues of material fact which preclude the entry of summary judgment against Sauls.

### Unocal's Allegations

Unocal alleges that it should prevail on its motion for any one of three reasons: (1) Sauls' intentional infliction of emotional distress claims are preempted by federal labor law; (2) Unocal is not liable for the actions of Sauls' co-workers; or (3) the actions of which Sauls complains do not rise to the level of extreme and outrageous conduct. Each of these matters will be addressed individually below.

### Standard of Review

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *St. Amant v. Benoit*, 806 F.2d 1294 (5th Cir.1987), *citing Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The burden of proof in a motion for summary judgment rests squarely on the shoulders of the movant. *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278 (9th Cir.1982). When disposing of a motion for summary judgment, the facts before the court must be viewed in a light most favorable to the non-moving party. *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *United States v. Diebold*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). Also, all justifiable inferences are to be drawn in favor of the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

### Preemption By Federal Labor Law

Unocal argues that § 301(a) of the Labor Management Relations Act, 29 U.S.C.A. § 185 *et seq.* ("LMRA"), has preempted Sauls' state law claims for intentional infliction of emotional distress, citing *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). In *Allis–Chalmers* the Court stated:

> Our analysis must focus, then, on whether the Wisconsin tort action for breach of the duty of good faith as applied here confers nonnegotiable state-law rights on employers or employees independent of any right established by contract, or, instead, whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract. If the state tort law purports to define the meaning of the contract relationship, that law is pre-empted.
> 471 U.S. at 213, 105 S.Ct. at 1912.

Consequently, it is critical to compare the state tort action *in quo* to the terms of the collective bargaining agreement ("Agreement").

■ In Texas, the elements of the tort of intentional infliction of emotional distress are: (1) the defendant acted intentionally or recklessly, (2) the conduct was extreme or outrageous, (3) the actions of the defendant caused the plaintiff emotional distress, and (4) the emotional distress suffered by the plaintiff was severe. *Bushell v. Dean*, 781 S.W.2d 652, 657 (Tex.App.—Austin 1990); *Tidelands Automobile Club v. Walters*, 699 S.W.2d 939, 942 (Tex.App.—Beaumont 1985, *writ ref'd n.r.e.*).

■ The relevant provision of the Agreement between Sauls' union and Unocal is Article IX, entitled "Discipline and Discharge". Article IX provides:

> A. Employees may be suspended or discharged for major offenses. Employees may be suspended for minor offenses but will not be discharged for minor offenses without first being notified that a repetition of this offense will make them liable to discharge. Such notices shall be given by the foreman or other representative of the Company in writing.
>
> B. An employee shall not be discharged if physically and mentally capable of continuing his duties on the account of an accident, unless the accident was caused by failure to follow instructions, carelessness, or malicious intent on the part of the employee.

C. Should any employee, alone, or with others willfully fail to refuse to obey orders in the plant, he or they will be subject to suspension or discharge.

D. When the Company reviews the action of an employee with him he will be given the opportunity of discussing his actions with or without Union representation.

Before any disciplinary action is taken by the Company as the result of this review without Union representation, the Union will be notified of the problem and given the opportunity to meet with the Company for the purpose of reviewing the facts.

E. In discretionary cases, Management will not refer to a past incident involving an employee if the letter resulting from the incident has been removed from his file.

Unocal argues that in order to hear Sauls' claim for intentional infliction of emotional distress, this court would have to construe the quoted terms of the Agreement. As a consequence, Unocal asserts *Allis–Chalmers* compels this court to hold that Sauls' tort claims are preempted. This court, however, believes that Sauls' tort claims can be addressed without reference to the Agreement and that the tort claims are not preempted. In *Allis–Chalmers,* the Court cautioned:

> Nor do we hold that every state-law suit asserting a right that relates in some way to a provision in a collective bargaining agreement, or more generally to the parties to such an agreement, necessarily is pre-empted by § 301.

471 U.S. at 220, 105 S.Ct. at 1916. It should also be stressed that Article IX of the Agreement governs the conduct of the Company in disciplinary matters pertaining to Union members. Article IX would not appear to apply should the Company contemplate disciplinary action against non-union management employees. Therefore, even if this court did have to construe the Agreement in regard to Unocal's disciplining or failure to discipline Union members, certainly this court would not have to construe the Agreement in assessing Unocal's

dealings with its non-union management employees. Sauls has named non-union management personnel in his complaint, notably including the refinery manager.

Unocal states in its memorandum in support that pursuant to the Company's past practices under the Agreement, only "just cause" will support disciplinary action against a Union employee. The agreement dealt with in *Lingle v. Norge Division of Magic Chef, Inc.,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), also contained an express "just cause" provision. In *Lingle,* a bargaining unit employee filed in state court a state law retaliatory discharge action against his employer. The employer removed the action to federal district court and asserted that § 301 of the LMRA preempted his claim because the court would have to construe the collective bargaining agreement to address the employee's state law claim. The district court and the court of appeals agreed with the employer and found the state law claim preempted. But the Supreme Court disagreed. While the Court recognized the need for a uniform body of federal common law in interpreting the relations between employers and union employees covered by collective bargaining agreements, 486 U.S. at 404 n. 3, 108 S.Ct. at 1880 n. 3, it found that resolution of the employee's retaliatory discharge claim did not require reference to the agreement:

> Each of these purely factual questions pertains to the conduct of the employee and the conduct and motivation of the employer. Neither of the elements requires a court to interpret any term of a collective-bargaining agreement. To defend against a retaliatory discharge claim, an employer must show that it had a nonretaliatory reason for the discharge ... this purely factual inquiry likewise *does not turn on the meaning of any provision of a collective-bargaining agreement.* Thus the state-law remedy in this case is "independent" of the collective-bargaining agreement in the sense that matters for § 301 pre-emption purposes ...

(emphasis added).

*Lingle,* 486 U.S. at 407, 108 S.Ct. at 1882 (citations omitted). Similarly, in the instant

matter, the resolution of Sauls' intentional infliction of emotional distress claims do not require the court to interpret the collective bargaining agreement; this court would sooner let its fingers do the walking in the Bell System Yellow Pages to interpret the United States Code. And even if there were some analytical overlap, the preemption bell would not necessarily ring. As stated by the Court in *Lingle:* "... even if dispute resolution pursuant to a collective-bargaining agreement, one the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is "independent" of the agreement for § 301 pre-emption purposes." 486 U.S. at 410, 108 S.Ct. at 1883.

What this court decides today regarding § 301 preemption of a state law claim for intentional infliction of emotional distress is not novel. The Supreme Court reached the same result in *Farmer v. United Brotherhood of Carpenters & Joiners of America*, 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977). Unocal argues *Farmer* is inapposite because the case involved preemption by the National Labor Relations Act and the plaintiff therein was suing his own union, not his employer. This court, however, finds *Farmer* very instructive. First, the National Labor Relations Board is a creature of the National Labor Relations Act. The NLRB is empowered to interpret and enforce the Labor Management Relations Act. Second, the plaintiff in *Farmer* was suing under a state law claim of intentional infliction of emotional distress, the precise tort at issue in the instant matter. Therefore, the Court's pronouncements regarding federal labor law preemption of this particular tort claim are quite apposite. The Court in *Farmer* reviewed a preemption test it had annunciated in *Linn v. Plant Guard Workers*, 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966).

First, the Court noted that the defamatory conduct involved in *Linn* was not protected under the NLRA. Second, there was an overriding state interest in protecting residents from the tortious conduct. Third, there was little risk the state claim "would interfere with the effective administration of national labor policy." And finally, the NLRB would lack authority (as would this court under the LMRA) to compensate the tort victim with damages. *Farmer*, 430 U.S. at 298, 97 S.Ct. at 1062. Application of this test to Sauls' tort claims yields the same no-preemption result.

Unocal further asserts that the Fifth Circuit's decision in *Strachan v. Union Oil Company*, 768 F.2d 703 (5th Cir.1985) compels this court to hold Sauls' tort claims preempted because "plaintiff's allegation that the company failed to adequately investigate his complaints of harassment requires interpretation of the collective bargaining agreement." (Defendant's Memorandum in Support of Second Motion for Summary Judgment at p. 26). The facts of *Strachan* are, however, distinguishable. The workers in *Strachan* were, like Sauls, employees of Union Oil Company and members of the Oil, Chemical and Atomic Workers Union which had an Agreement with Union Oil Company. However, the factual similarities end there.

The workers in *Strachan* were suspended after the company suspected that they were drug abusers and/or afflicted with mental problems.[1] Medical tests and examinations were conducted. The results proved negative. Thereafter, the workers were allowed to return to work. The workers then sued Unocal in tort in state court over the company's actions in forcing them to undergo the examinations. Unocal removed the case and the district court granted summary judgment as to both workers' claims on the ground that the state tort claims were preempted by the LMRA. The

---

**1.** In the instant lawsuit, Unocal alleges that Sauls was terminated because company officials suspected Sauls had psychological problems and ordered Sauls to submit to a physical and/or mental examination. However, since the motion before the court is for summary judgment, the court will accept Sauls' version of the facts. Sauls, in his deposition testimony, denies any mental infirmities and asserts Unocal's mandate to submit to examinations was a component of the company's campaign of harassment toward him.

Fifth Circuit panel found that the workers were suspected of violating the terms of the collective bargaining agreement by engaging in conduct that was expressly addressed by the Agreement. Therefore, preemption was properly applied. However, the Agreement in the instant matter contains no provisions dealing, even remotely, with conduct approaching commission of the tort of intentional infliction of emotional distress. The panel's decision also was critical of one of the worker's decision to resort to the courts prior to exhausting his remedies under the Agreement, i.e. filing a grievance. Sauls, in contrast, did file a grievance regarding Unocal's demand on him to submit to an examination. The arbitrator found that Sauls had to, under the Agreement, submit to the examination. Sauls did so and was restored to his position. Now, however, Sauls has turned to this court to seek damages for conduct the Agreement did not address and which the arbitrator could not redress.

Further analysis of *Strachan* reveals much about the dissimilarities between the facts of that case and the instant matter, dissimilarities that are present in much of the voluminous authority Unocal has cited to this court. In *Strachan* the workers alleged malice on the part of the company officials. However, the Fifth Circuit panel found, after reviewing the workers depositions, "not the slightest hint of malice ..." 768 F.2d at 706. The depositions and pleadings of Sauls, however, are replete with instances of malicious and outrageous conduct on the part of Sauls' co-workers, supervisors, and his refinery manager.[2] In sum, this court finds *Strachan* not only distinguishable, but as binding precedent that counsels *against* a finding of preemption.

This court's reasoning is further buttressed by the Fifth Circuit's decision in *Miles v. Melrose*, 882 F.2d 976 (5th Cir. 1989), *cert. denied*, — U.S. ——, 110 S.Ct. 1783, 108 L.Ed.2d 785 (1990). In *Miles* the court, undertaking an LMRA § 301 pre-

emption analysis in light of a failure to warn tort claim, held:

> The key question about the "independence" of the tort is whether the determination of liability *under the tort claim* requires an interpretation of the collective bargaining agreement.

*Miles*, 882 F.2d at 990 (emphasis in original). *See also Harvey Industries v. Local 376 FW*, 715 F.Supp 171, 175 (E.D.Tex. 1989).

In conclusion, the court finds that Sauls' claims for intentional infliction of emotional distress are not preempted by § 301 of the Labor Management Relations Act, 29 U.S.C.A. § 185, *et seq.*

### Unocal's Liability for Sauls' Co-workers

■ Unocal next argues that it should not be held liable in tort for the acts of Sauls' co-workers. Sauls alleges his co-workers accused him of being a liar, threatened Sauls with physical harm, issued him improper tool bits, intentionally bumped into him with their shoulders, removed his time card from its proper place in the time card box, told Sauls he was going to lose his job, and entered into an agreement to harass Sauls. Sauls further alleges "[t]his agreement was known to management personnel who joined in the harassment and condoned and ratified the actions of the employees." (Plaintiff's First Amended Complaint at pp. 10–11.)

Unocal argues that the above-listed conduct cannot be construed to lie within the course and scope of Sauls' co-workers employment, citing, among eight others, the case of *Texas & Pac. Ry. v. Hagenloh*, 247 S.W.2d 236 (Tex.1952). The Texas Supreme Court in *Hagenloh* recited a narrow test for "course and scope":

> The rule is that "when the servant turns aside, for however short a time, from the prosecution of the master's work to engage in an affair wholly his own, he ceases to act for the master, and the responsibility for that which he does in

**2.** Specific examples of the conduct of individuals at the refinery toward Sauls, as found in the record, will be addressed *infra* in the process of

disposing of Unocal's remaining grounds for partial summary judgment.

pursuing his own business or pleasure is upon him alone."

*Hagenloh,* 247 S.W.2d at 241 (citations omitted). The court further held that "[i]t is not *ordinarily* within the scope of a servant's authority to commit an assault of a third person." 247 S.W.2d at 239. (emphasis added). And the court is certainly correct; however, what "ordinarily" happens in the workplace and what Sauls alleges (and supports with deposition transcripts) he underwent while employed at the Beaumont refinery of the Union Oil Company of California appear to be disparate matters.

Additionally, in the more than thirty years since the *Hagenloh* decision was rendered, Texas courts have had occasion to redefine and expand on the basis of a master's liability for the conduct of his servant. In *Medical Slenderizing v. State,* 579 S.W.2d 569 (Tex.App.—Tyler 1979, *writ ref'd n.r.e.*), the court held:

> The rule governing civil liability is applicable when the act is done by the agent in the course of his employment, although done wantonly or recklessly or against the express orders of the principal. In such cases the liability is not imputed because the principal actually participates in the malice or fraud, but because the act is done for the benefit of the principal …

579 S.W.2d at 674. Further, the master may be held liable "… if the purpose of serving the master's business actuates the servant to any appreciable extent his acts are within the scope of employment." *Ralph v. Mr. Paul's Shoes,* 572 S.W.2d 812, 816 (Tex.App.—Corpus Christi 1978, *writ ref'd n.r.e.*).

In the instant case, the court finds there remains a genuine issue of material fact regarding on whose account Sauls' co-workers were acting.

### Extreme and Outrageous Conduct

Finally, Unocal argues that Sauls' "claim of intentional infliction of emotional distress is subject to dismissal because plaintiff does not allege extreme and outrageous conduct." (Defendant's Memorandum in Support of Second Motion for Summary Judgment at pp. 37–48). However, this court is not inclined to take the assessment of Unocal's conduct away from the jury. A recitation of the behavior to which Sauls alleges he was subjected, as found in his First Amended Complaint and deposition transcript, should amply illustrate this point. (1) Sauls' co-workers accused him of being a liar when he told them that they were mistaken in assuming they were named in a complaint made by a female co-worker of Sauls. These co-workers next proceeded to assail Sauls with language that would be improper to reproduce here and which would likely incite to violence even the most seasoned longshoreman. (2) Another co-worker knowingly issued Sauls drill bits smaller in diameter than the bolts that were to fill the holes to be drilled. (3) Other co-workers frequently bumped into Sauls with their shoulders while he worked. (4) Unknown person(s) removed Sauls' time card from the time card box each day for one week. (5) Another group of co-workers told Sauls he was going to lose his job because he wouldn't end his role in bringing to light alleged sexual harassment against a female co-worker [the same female co-worker with whom Sauls was accused of performing sexual acts]. (6) Co-workers entered into an agreement to harass Sauls for sticking up for the female co-worker. (7) Sauls' foreman accused him of being the source of the sexual harassment problems at the refinery, saying "[y]ou're the damn problem" and "[i]f you'd keep your mouth shut and stay off the telephone, we could have kept this stuff [the sexual harassment] quiet." (8) Another foreman forced Sauls to drive him to a remote location at the refinery complex where he called Sauls "a g— d— liar." Finally, (9) Unocal's Beaumont *refinery manager* told Sauls, regarding Sauls' complaints concerning the behavior of his superiors, "I am tired of people making accusations about my supervisors. I am going to protect my supervisors."

One should note that Unocal does not dispute the allegations detailed above. Rather, Unocal's approach is to blithely assert that the conduct does not rise to the

level of "extreme or outrageous." That Unocal even makes this assertion is extreme and outrageous. But the court will nevertheless refer to some instances where conduct less egregious than that Sauls alleges he endured was found by Texas courts to be "extreme and outrageous."

In *Tidelands Automobile Club v. Walters*, 699 S.W.2d 939 (Tex.App.—Beaumont 1985, *writ ref'd n.r.e.*), a seventy year old man's wife was killed in an automobile accident. In an apparent attempt to evade liability under the life insurance policy it had issued, the insurer altered the cause-of-death letter sent by the justice of the peace to the widower. The letter was altered to read that the decedent was intoxicated at the time of her death. The insurer then attempted to deny coverage. The decedent had not consumed alcohol at any time during the couple's forty-six year marriage. The appellate court affirmed the jury's finding that the act of altering the letter constituted extreme and outrageous conduct. *Tidelands*, 699 S.W.2d at 941.

In *Bushell v. Dean*, 781 S.W.2d 652, 653 (Tex.App.—Austin 1989), "outrageous conduct" was found where the plaintiff's supervisor commented on her body, touched her, told her that he desired a sexual encounter with her, and treated her differently after she spurned his amorous advances.

And in *Dean v. Ford Motor Credit Co.*, 885 F.2d 300 (5th Cir.1989), the court, applying Texas law, found outrageous the conduct of an employer of planting missing checks in the plaintiff's purse, thereby putting the plaintiff in fear that she would be accused of committing a crime.

After considering examples of what constitutes "extreme and outrageous conduct" in Texas jurisprudence, this court finds the conduct as alleged by Sauls and not challenged by Unocal to present a genuine issue of material fact precluding the entry of summary judgment.

Finally, this court turns to a case cited by Unocal for the proposition that the Texas Supreme Court does not yet recognize *negligent* infliction of emotional distress as a separate cause of action in the employer/employee relationship. *Fiorenza v.*

*First City Bank–Central*, 710 F.Supp. 1104 (E.D.Tex.1988), rendered by this very court, concerned the tort of *negligent* infliction of emotional distress. Sauls has alleged *intentional* infliction of emotional distress. Also, Sauls has alleged that his emotional distress was caused by many actions of Unocal, just one of which was retaliatory termination. In *Fiorenza*, I stated "plaintiff readily acknowledges that his claim of negligent infliction of emotional distress arises *solely* from the termination of his employment." 710 F.Supp. at 1105 (emphasis added). This decision is therefore inapposite.

### Conclusion

In sum, Defendant Unocal's second motion for partial summary judgment is, in all things, DENIED.