WORNICK COMPANY, Ron Wornick, Bill Barth, Executive Vice President, Right Away Foods Corporation, Valerie Hutchins Woerner, President, MRE Division, Petitioners,

v.

Diana CASAS, Respondent.

No. D–1847.

Supreme Court of Texas.

June 30, 1993.

John E. McFall, Dallas, for petitioners.

Brinkley L. Oxford, Edinburg, for respondent.

## OPINION

PHILLIPS, Chief Justice.

The issue presented is whether the manner in which Diana Casas was discharged by her employer constituted "outrageous conduct" necessary to state a claim for intentional infliction of emotional distress. We hold that the employer's conduct was as a matter of law not outrageous. Therefore, we reverse the judgment of the court of appeals, 818 S.W.2d 466, and we render judgment that Casas take nothing.

### I

■ We must determine whether the court of appeals erred in reversing the trial court's summary judgment. Summary judgment is proper if the movant establishes that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law. *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 675–79 (Tex.1979). A defendant who conclusively negates one of the essential elements of the plaintiff's cause of action is therefore entitled to summary judgment. *See Rodriguez v. Naylor Industries, Inc.,* 763 S.W.2d 411, 413 (Tex. 1989). In reviewing a summary judgment, we must accept all evidence favorable to the non-movant as true, indulging every reasonable inference and resolving all doubts in favor of the non-movant. *El Chico Corp. v. Poole,* 732 S.W.2d 306, 315 (Tex.1987).

Under that standard of review, the record reflects the following: Diana Casas was employed by Right Away Foods Corporation ("RAFCO"), a wholly owned subsidiary of Wornick Company, from December 1979 until her discharge on April 22, 1986. Casas was assigned to RAFCO's "M.R.E." (Meals Ready to Eat) division, which assembled military rations for sale to the United States Department of Defense. Casas was hired as personnel manager for the M.R.E. division, and at the time of her discharge served as its director of human resources. Casas' firing was sudden and unexpected. She was approached by her supervisor, Valerie Hutchins Woerner, in the hall at the RAFCO offices at approximately 3:45 p.m. and asked to come to Woerner's office. There, Woerner said that she had some "bad news," that Casas was being terminated. No one else was present at this meeting and the office door was closed. The reasons given by Woerner were that Casas had been disloyal to the company, had exhibited a bad attitude by "snapping at people," and had failed to perform certain assigned tasks. Prior to this time, however, Casas had received favorable job-performance reviews, and she believed that RAFCO fired her to prevent her from revealing information to government auditors concerning unethical practices of RAFCO employees.[1] Woerner refused Casas' request for further explanation and told her to leave the property immediately. Although Woerner appeared nervous, her demeanor was normal, and she did not raise

---

1. Casas also suggested in an affidavit filed in the trial court that her sex, age and national origin were motivating factors in the discharge. Casas, however, does not advance these grounds in this Court to support her argument that the trial court erroneously granted summary judgment on the intentional infliction of emotional distress claim.

her voice. The entire meeting lasted only about four minutes.

Upon leaving Woerner's office, Casas was approached by a security guard, who explained that he was to escort her off the premises. In the hallway, Casas then saw Bill Barth, president of RAFCO, and asked to speak with him. The two went to Barth's office, where Casas explained what had just happened. Barth's door was closed during this meeting, and the security guard waited outside. Barth did not seem surprised, but he asked whether Casas disputed Woerner's allegations. When Casas replied that she did, Barth advised her not to say or do anything, promising that they would "all" discuss the matter when Barth returned from a trip a few days later. Barth led Casas to believe that she would be on leave of absence, rather than terminated, pending that meeting. Barth was "very pleasant," and Casas' conversation with him lasted no more than ten minutes.

Casas and the security guard then proceeded to Casas' office, where Joe Sepulveda, the security supervisor, was waiting. Sepulveda, who had been on vacation, told Casas that Woerner had called him at home to come escort Casas off the property. Sepulveda was "uneasy" with the situation. He gave her a box in which to pack her belongings. Another person then came to the office and told Sepulveda that Woerner wanted Casas off the property within five minutes. They then walked to Casas' car, with Sepulveda carrying Casas' box. Sepulveda placed the box in the car, and, shortly after 4:30 p.m., Casas drove away. Neither Sepulveda nor the original security guard were rude or offensive in any way. It was standard company procedure for security guards to escort terminated hourly employees off the property, but not terminated salaried employees such as Casas.

Barth did not set up the promised meeting to discuss Casas' termination, and he did not return her phone calls or correspondence. Casas was removed from the payroll soon after her meeting with Woerner, and she was not allowed to return to the company premises.

Casas subsequently sued RAFCO, the Wornick Company, Woerner, Barth, and Ron Wornick, chairman of the board of the Wornick Company (hereinafter collectively referred to as "RAFCO"), alleging 1) a violation of the Texas Equal Rights Amendment, Tex. Const. art. I, § 3a, 2) intentional infliction of emotional distress, 3) wrongful discharge under *Sabine Pilot Service, Inc. v. Hauck*, 687 S.W.2d 733 (Tex.1985), and 4) breach of an alleged duty of good faith and fair dealing arising from the employment relationship. The trial court granted defendants' motion for summary judgment on all claims. The court of appeals reversed as to Casas' claim for intentional infliction of emotional distress, but otherwise affirmed the judgment of the trial court. As only RAFCO sought review in this Court, the sole issue before us is whether a genuine issue of material fact exists regarding each element of Casas' claim for intentional infliction of emotional distress.

## II

■ We recently recognized the tort of intentional infliction of emotional distress, adopting the elements set forth in Restatement (Second) of Torts § 46 (1965). *Twyman v. Twyman*, 855 S.W.2d 619 (Tex. 1993). To recover under this tort, the plaintiff must prove that 1) the defendant acted intentionally or recklessly, 2) the conduct was "extreme and outrageous," 3) the actions of the defendant caused the plaintiff emotional distress, and 4) the resulting emotional distress was severe. *Id.* at 621.

■ We conclude that the summary judgment evidence conclusively establishes that RAFCO's conduct was not "outrageous," an essential element of the intentional infliction tort. Outrageous conduct is that which "[goes] beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Restatement § 46, cmt. d. "It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery...." *Id.*, cmt. h.

Subject to certain narrow exceptions, employees in Texas may be terminated at will and without cause. *Sabine Pilot Service, Inc. v. Hauck,* 687 S.W.2d 733, 734 (Tex. 1985); *East Line & R.R.R. Co. v. Scott,* 72 Tex. 70, 10 S.W. 99, 102 (1888). The trial court and court of appeals rejected Casas' contentions that her firing fell within exceptions to the employment-at-will doctrine, and Casas has not challenged those findings here. RAFCO therefore acted within its legal rights in discharging Casas. Therefore, the fact of discharge itself as a matter of law cannot constitute outrageous behavior. *See Reid v. Sears, Roebuck & Co.,* 790 F.2d 453, 462 (6th Cir.1986) (no liability for intentional infliction of emotional distress where an actor does no more than insist on its legal rights).

Casas argues, however, that even if the firing was not outrageous, the *manner* in which she was fired was outrageous. We have previously observed that there may be instances where a termination is accompanied by outrageous behavior. *See Diamond Shamrock Refining and Marketing Co. v. Mendez,* 844 S.W.2d 198, 202 (Tex. 1992). In this case, however, the record conclusively establishes that RAFCO's conduct fell short of the requisite level of outrageousness.

RAFCO's summary judgment evidence, consisting primarily of Casas' own deposition testimony, details the circumstances surrounding her firing. Woerner required Casas to leave the premises immediately and directed security guards to escort her, actions which could reasonably be expected to cause humiliation. In exercising its rights as an employer-at-will, however, RAFCO's conduct as a matter of law did not "exceed all possible bounds of decency" and was not "utterly intolerable in a civilized community." *See Corum v. Farm Credit Servs.,* 628 F.Supp. 707, 718–719 (D.Minn.1986) (defendant's conduct not outrageous where it abruptly fired plaintiff after years of loyal service and required him to clean out his desk and leave immediately); *Toth v. Square D Co.,* 712 F.Supp. 1231, 1238 (D.S.C.1989) (discharging long-term employees with no advance notice and escorting them from the plant in the presence of their peers not sufficiently outrageous to support liability); *Seneca Knitting Mills Corp. v. Wilkes,* 120 A.D.2d 955, 502 N.Y.S.2d 844, 845 (1986) (escorting plaintiff from the premises upon his termination is not outrageous); *Lapidus v. New York City Chapter of the New York State Assoc. for Retarded Children, Inc.,* 118 A.D.2d 122, 504 N.Y.S.2d 629, 633 (1986) (plaintiff's allegations that he was humiliated by being fired in the middle of the working day and being told not to go back to this office did not state a claim for intentional infliction of emotional distress). Even accepting Casas' contention that she was fired because she possessed incriminating information, this does not constitute an existing exception to the employment-at-will doctrine under *Sabine Pilot,* and Casas does not argue for extending the *Sabine Pilot* exception to such conduct. RAFCO, therefore, was exercising its legal rights, which legally cannot constitute outrageous conduct.

Casas relies on *Russ v. TRW, Inc.,* 59 Ohio St.3d 42, 570 N.E.2d 1076 (1991), to support her claim. In that case the plaintiff, an accountant, participated in fraudulent pricing practices in connection with government contracts after his supervisors led him to believe that the pricing practices were legitimate. When the pricing scheme was later discovered, the plaintiff was discharged, and the employer supplied his name to the federal government for possible criminal investigation and indictment. By firing the plaintiff "under circumstances designed to give the impression that he was responsible for the practices," 570 N.E.2d at 1082, such that he did in fact became the subject of a federal criminal investigation, the court concluded that some evidence of outrageous conduct by the employer was presented. Such egregious facts are simply not present here.

Amicus curie National Employment Lawyers Association cites several other cases where courts have found outrageous conduct in the employment setting. *See American Medical International, Inc. v. Giurintano,* 821 S.W.2d 331, 340–342 (Tex. App.—Houston [14th Dist.] 1991, no writ);

*Havens v. Tomball Community Hosp.*, 793 S.W.2d 690, 691–692 (Tex.App.—Houston [1st Dist.] 1990, writ denied); *Bushell v. Dean*, 781 S.W.2d 652, 657–658 (Tex.App.—Austin 1989), *rev'd in part on other grounds*, 803 S.W.2d 711 (Tex.1991); *Wilson v. Monarch Paper Co.*, 939 F.2d 1138, 1145 (5th Cir.1991); *Dean v. Ford Motor Credit Co.*, 885 F.2d 300, 307 (5th Cir.1989); *Guzman v. El Paso Natural Gas Co.*, 756 F.Supp. 994, 1002–03 (W.D.Tex.1990); *Sauls v. Union Oil Co. of Calif.*, 750 F.Supp. 783, 789 (E.D.Tex.1990); *M.B.M. Co. v. Counce*, 268 Ark. 269, 596 S.W.2d 681, 683–688 (1980); *Alcorn v. Anbro Engineering, Inc.*, 2 Cal.3d 493, 86 Cal.Rptr. 88, 89–91, 468 P.2d 216, 217–219 (1970); *Agis v. Howard Johnson Co.*, 371 Mass. 140, 355 N.E.2d 315, 317–319 (1976). Like *Russ, supra*, these decisions each involve conduct distinguishable from that of RAFCO in the present case. In *Dean v. Ford Motor Credit Co.*, the plaintiff's supervisor intentionally placed some of the employer's checks in plaintiff's purse to make it appear that she was a thief. In *Wilson*, an executive manager with thirty years experience, who was protected by the federal Age Discrimination in Employment Act, was demoted to a position with menial and demeaning duties in the hopes that he would be humiliated and quit. *Giurintano, Havens, Bushell, Guzman* and *Sauls* each involved repeated or ongoing harassment of an employee. In *Alcorn*, the plaintiff was subjected to vile and offensive racial slurs by his supervisor. The employer in *Counce*, after firing the plaintiff, refused to release her back pay until plaintiff passed a polygraph test concerning money missing from a cash register. Even after the plaintiff passed this test, the employer still withheld a portion of her wages until the plaintiff notified the state department of labor. In *Agis*, a restaurant manager, at a staff meeting of waitresses, informed them that "there was some stealing going on," 355 N.E.2d at 317, and until he learned the identity of the responsible person he would begin firing all the present waitresses in alphabetical order. He then fired plaintiff Agis. Even if all these decisions are correct, they do not support Casas' claim that RAFCO's conduct in this case was outrageous.

Termination of an employee is never pleasant, especially for the employee. But if we accept Casas' arguments in this case, employers would be subjected to a potential jury trial in connection with virtually every discharge, and "there would be little left of the employment-at-will doctrine." *Mendez*, 844 S.W.2d at 202.

We conclude that the conduct of RAFCO in this case was, as a matter of law, not outrageous. We accordingly reverse the judgment of the court of appeals and render judgment that Casas take nothing.

Concurring Opinion by Justice HECHT joined by Justice ENOCH.

Concurring Opinion by Justice DOGGETT joined by Justice GAMMAGE.

HECHT, Justice, concurring.

Two months ago this Court recognized for the first time a tort of intentional infliction of emotional distress. *Twyman v. Twyman*, 855 S.W.2d 619 (Tex.1993). This tort allows recovery of money damages for severe emotional distress caused by another's extreme and outrageous conduct if that conduct is intentional or reckless. There are, however, no legal standards by which judges and juries can distinguish conduct which is extreme and outrageous from conduct which is not. And because outrageousness is entirely in the eye of the beholder, it can neither be proved nor disproved by evidence. Liability under this tort depends upon whether a jury, trial court or appellate court, as the case may be, is offended by the particular circumstances of the case before it. This case, the first in which the Court attempts to decide what is extreme and outrageous conduct, demonstrates the impossibility of the effort.

Most of Diana Casas' complaints are described in the Court's opinion. Since this is a summary judgment case, we must take Casas' evidence as true. Her affidavit states that Wornick Co. dismissed her for reasons that were unfounded, and that she was denied any opportunity to discuss her

termination further with her superiors. An affidavit by Wornick's retired vice president of operations confirms Casas' assertions that she was a highly rated, valuable employee. Casas' affidavit suggests that because she is a middle-aged Hispanic woman who insists on acting ethically and was aware of occasions in which another employee's actions had not been entirely legal, Wornick wanted to replace her with a younger, less experienced, and more "malleable" person. Again, the affidavit of Wornick's vice president confirms that the employee named by Casas may have acted unethically and possibly illegally. Casas also complains that she was immediately and unceremoniously escorted from the premises by a security guard.

Was Wornick's conduct outrageous? Casas was an employee at will and subject to termination without notice or cause. The summary judgment record does not indicate that Wornick violated any legal right she may have had. But that is not the issue here. The issue is: was Wornick's conduct outrageous? The trial court thought it was not, as a matter of law. One member of the appeals court panel agreed, but the other two concluded that the issue was a factual dispute to be decided by a jury. This Court agrees with the trial court. But why? What principles inform this decision?

There are none to be found in the Court's opinion. The Court holds that Wornick's conduct was not outrageous for two reasons: first, because no other reported decision has ever held similar conduct to be outrageous, and second, because a contrary result would impinge on the doctrine of employment at will. As for the first, I do not understand the significance of caselaw in this context. If another court had decided that conduct like that Casas complains of was outrageous, would the Court decide this case differently? The implication is that "outrageousness" is what most courts say it is, but that is, of course, no principle at all. As for the second reason the Court gives for its decision, there is nothing new to the idea that an employer may be liable for tortious or illegal conduct in discharging an employee at will. The doctrine of employment at will is not such an absolute that it cannot yield to other legal doctrines. The mere fact, entirely unsurprising, that the new tort impinges on the doctrine of employment at will does not explain why the former should yield.

The truth of the matter is that Wornick's conduct was not outrageous simply because most of the Members of this Court, Casas' court of last resort, are not sufficiently offended by it. If they were, the result would be different. If Casas were permitted to present her case to a jury, it is not at all unlikely that she would prevail, not because her case has more merit to it than this Court sees, but because jurors might well have different views about what is outrageous. Twelve employers would probably agree with this Court; twelve recently terminated employees might not. I have my own personal view of what is outrageous, but I do not believe that Casas should win or lose her case based upon my own personal opinions. While I am constrained to acknowledge that *Twyman* is the law, I am not obliged to decide this case or any other on the basis of my personal views. To do so, in my view, substitutes the rule of man for our rule of law. With the tort of intentional infliction of emotional distress, the Court embarks on what I predict will be an endless wandering over a sea of factual circumstances, meandering this way and that, blown about by bias and inclination, and guided by nothing steadier than the personal preferences of the helmsmen, who change with every watch.

Casas asserts no principled basis for holding that Wornick's conduct was outrageous, and I can determine none. For this reason I conclude that she is not entitled to prevail upon her claim. Accordingly, I concur only in the judgment of the Court.

Justice ENOCH joins in this concurring opinion.

DOGGETT, Justice, concurring.

Diana Casas is outraged that she was fired as the Director of Human Resources for Wornick Co., despite a series of excellent job evaluations, the last of which came

shortly before her dismissal and described her as "one of [the] company's best resources." Under Texas law, much more is required to establish a cause of action. The employment-at-will doctrine permitting an employee to be fired for some reason or no reason is well established. *See East Line & R.R.R. Co. v. Scott,* 72 Tex. 70, 10 S.W. 99 (1888). An employee cannot circumvent that doctrine by simply claiming that a lawful dismissal was emotionally stressful. Undoubtedly, most terminations are upsetting.

In the course of a separate "assault on the right to privacy in Texas," the majority has, however, sought to reach out far beyond any reasonable protection of the employment-at-will doctrine with a

> restrictive interpretation of "outrageous," [so that] even an employer's admission to having falsely advertised that an employee was a thief would not be viewed as sufficiently "intolerable" to justify legal recourse....

\* \* \* \* \* \*

> [O]nce properly terminated, an employee can thereafter be blacklisted by deliberate falsehoods.

*Diamond Shamrock Refining and Mktg. Co. v. Mendez,* 844 S.W.2d 198, 219 & n. 19 (Tex.1992) (Doggett, J., dissenting).[1]

Despite the overwriting in *Mendez,* there are a few circumstances in which a cause of action for intentional infliction of emotional distress would be appropriate in an employment dismissal context. Though the majority obviously thinks otherwise, evidence, for example, that an employer falsely and knowingly accused an employee of criminal misconduct—behavior that would in any other circumstance be actionable—should not be immunized from liability simply because it occurred in an employment context.

Here Diana Casas basically complains of the fact of her termination and the basis thereof; she failed to provide any summary judgment evidence of outrageous independent conduct or anything else of legal significance to distinguish her firing from any ordinary termination. Though she apparently had a subjective belief that her dismissal was related to her knowledge of coworker dishonesty, she never reported this to anyone nor did she attempt to make any claims either here or in the court of appeals that she was a "whistleblower," as I have described that justified exception to the employment-at-will doctrine in *Winters v. Houston Chronicle Publ. Co.,* 795 S.W.2d 723, 725 (Tex.1990) (Doggett, J., concurring). *See also* Michael J. McKiernan, *Protection for Private Employee Whistleblowers in Texas?* 54 Tex.B.J. 667 (1991) (discussing concurrence's "guidance to both employers and employees by defining the elements of a [whistleblower] cause of action"); David M. Feldman, Maretta C. Toedt, and Robin W. Coopwood, *Employment-at-Will in Texas: When and How Will the Whistle Blow?* 10 Corporate Counsel Rev. 119 (1991) (appropriately "advis[ing] [employers] to pay heed to the elements set forth [in the concurrence]").

Accordingly, I concur in today's judgment but not the opinion.

Justice GAMMAGE joins in this concurring opinion.

---

**1.** Though eager here and in *Mendez* to declare as a matter of law that certain conduct is *not* outrageous, the majority is obviously unwilling to declare conduct, no matter how egregious, legally outrageous. *See Boyles v. Kerr,* 855 S.W.2d 593, 611 (Tex.1993) (refusing to find outrageous the surreptitious videotaping of a woman during sexual intercourse and subsequent showing of the tape to others); *Twyman v. Twyman,* 855 S.W.2d 619 (Tex.1993) (remanding for trial issue of whether man's insistence that a prior rape victim engage in bondage activities was outrageous).