In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00031-CV
______________________________


RAYNELL HILL, INDIVIDUALLY AND AS
REPRESENTATIVE OF THE ESTATE OF
RANDINA RAYE BURLESON, DECEASED, Appellant
 
V.
 
CHAD McKINLEY BARTLETTE, Appellee


                                              

On Appeal from the 123rd Judicial District Court
Panola County, Texas
Trial Court No. 2003-A-093


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Ross
Concurring Opinion by Justice Carter

O P I N I O N

          Raynell Hill sued Chad McKinley Bartlette for wrongfully causing the death of her
daughter, Randina Raye Burleson. The trial court granted summary judgment in favor of
Bartlette. Hill appeals, contending in her sole point of error the trial court erred in granting
that judgment.
          We affirm the trial court's judgment because Hill failed to negate Bartlette's statute
of limitations defense. Also, Bartlette proved as a matter of law that Hill is barred from
bringing the current claims because there has been an accord and satisfaction on all
claims.
Standard of Review
          The propriety of a summary judgment is a question of law. We therefore review
de novo the trial court's decision. Natividad v. Alexsis, Inc., 875 S.W.2d 695, 699 (Tex.
1994). Summary judgment for a defendant is proper when the defendant negates at least
one element of each of the plaintiff's theories of recovery or pleads and conclusively
establishes each element of an affirmative defense. Sci. Spectrum v. Martinez, 941
S.W.2d 910, 911 (Tex. 1997); Wornick Co. v. Casas, 856 S.W.2d 732, 733 (Tex. 1993).
          The movant has the burden of showing that there is no genuine issue of material
fact and that it is entitled to judgment as a matter of law. Nixon v. Mr. Prop. Mgmt. Co.,
690 S.W.2d 546, 548–49 (Tex. 1985). However, once the movant establishes that it is
entitled to summary judgment, the burden shifts to the nonmovant to show why summary
judgment should not be granted. Casso v. Brand, 776 S.W.2d 551, 556 (Tex. 1989).
          When a trial court's order granting summary judgment does not specify the ground
or grounds relied on for its ruling, summary judgment will be affirmed on appeal if any of
the theories advanced are meritorious. Star-Telegram, Inc. v. Doe, 915 S.W.2d 471, 473
(Tex. 1995). In this case, the trial court did not specify the grounds relied on for its ruling. 
We therefore may reverse the granting of summary judgment only if a genuine issue of
material fact exists as to each theory Bartlette presented.
Background
          Hill lived in El Paso, but her daughter, Burleson, lived with Hill's sister, Jo
Collinsworth, and Jo's husband, Jerry Collinsworth, in Upshur County while Burleson
attended Kilgore College. Early on December 25, 1999, Burleson was the passenger in
an automobile driven by Chad Bartlette in Panola County. Bartlette fell asleep. The car
left the roadway and slammed into a concrete culvert. Burleson died less than two hours
later. 
          Jerry


 had insurance through Texas Farmers Insurance Company on the automobile
in which Burleson was riding at the time of the accident. Texas Farmers hired a law firm
in anticipation of claims against Bartlette and Jerry. The firm assigned the case to Todd
Lessert, an attorney with the firm. 
          Lessert contacted Jo and prepared documents so that Jo could serve as the
temporary administrator of Burleson's estate. Around November 2, 2001, Lessert
contacted Hill and asked her to sign a waiver of service. On January 3, 2002, Hill signed
the waiver of service in which she agreed that the application to appoint her sister, Jo, as
temporary administrator could be heard without further notice to her. 
          On May 24, 2002, Jo, in her capacity as temporary administrator, signed a
settlement agreement releasing Bartlette, Jerry, and Texas Farmers from all claims
growing out of the accident. In return, Texas Farmers issued a check to Jo for $25,000.00. 
          After receiving the check, Jo had several conversations with Hill regarding how the
money should be distributed. They eventually reached an impasse, and Hill claims she did
not receive any of the settlement proceeds. 
          Three and a half years after Burleson's death, Hill filed the current lawsuit against
Bartlette. She asserts wrongful death and survival claims. 
          Bartlette filed a motion for summary judgment with the trial court. He advanced
three theories in support of that motion. One, Hill's claims are barred by the applicable
statute of limitations. Two, there has been an accord and satisfaction on all claims barring
the current lawsuit. Three, Hill ratified the underlying settlement agreement and therefore
is precluded from bringing the current lawsuit. 
Statute of Limitations Defense
          A person must bring suit for a wrongful death or survival claim within two years after
the death of the injured person. Tex. Civ. Prac. & Rem. Code Ann. § 16.003(b) (Vernon
Supp. 2005). Burleson died December 25, 1999. Thus, the limitations period ended
December 26, 2001. The present lawsuit was not filed until June 25, 2003, eighteen
months after the limitations period had ended.
          Hill agrees the lawsuit was not filed within the limitations period. She contends,
however, that the doctrine of equitable estoppel should prohibit Bartlette from asserting a
statute of limitations defense. 
          A plaintiff may invoke equitable estoppel to prevent an opponent from prevailing on
limitations if the opponent, his or her agent, or representatives make representations that
induce the plaintiff to delay filing suit within the applicable limitations period. Forrest v. Vital
Earth Res., 120 S.W.3d 480, 486 (Tex. App.—Texarkana 2003, pet. denied) (citing Cook
v. Smith, 673 S.W.2d 232, 235 (Tex. App.—Dallas 1984, writ ref'd n.r.e.)).
          Equitable estoppel consists of five elements: (1) a false representation or
concealment of material fact; (2) the representation was made with knowledge or the
means of knowledge of the true facts; (3) the representation was made to a party without
knowledge or the means of knowledge of the true facts; (4) the representation was made
with the intention that it would be acted on; and (5) the party to whom the representation
was made relied on it to his or her prejudice. Vills. of Greenbriar v. Torres, 874 S.W.2d
259, 264 (Tex. App.—Houston [1st Dist.] 1994, writ denied); Cook, 673 S.W.2d at 235.
          Hill bears the burden of raising a fact issue as to each element of equitable
estoppel. When the face of a motion for summary judgment shows the action is barred by
limitations, the nonmovant bears the burden of producing summary judgment evidence
sufficient to raise a fact issue on the affirmative defense of estoppel. Forrest, 120 S.W.3d
at 486; see also Gifford v. Bank of Sw., 712 S.W.2d 182, 184 (Tex. App.—Houston [14th
Dist.] 1986, no writ). If the nonmovant does not raise a fact issue as to every element of
equitable estoppel, summary judgment is proper. See Cook, 673 S.W.2d at 235.
          The cases applying equitable estoppel are cases involving promises by a defendant,
which are not intended to be fulfilled, but instead are intended to induce the plaintiff to
delay filing the suit until after the limitations period has run. Forrest, 120 S.W.3d at 487. 
In cases involving liability insurance, equitable estoppel is typically asserted when an
injured party, based on representations of future payment by an insurance adjuster for the
defendant, delays filing suit until the statute of limitations has expired. Then, on expiration
of the limitations period, the insurance company refuses payment.
          For example, in Frank v. Bradshaw, 920 S.W.2d 699 (Tex. App.—Houston [1st Dist.]
1996, no writ), an insurance adjuster allegedly made representations to Frank, the victim
of a motor vehicle accident, that there was no time problem with regard to her claim. He
allegedly promised Frank that, after the treatment was finished and all of her medical bills
were received, he would pay her claim. After the insurance adjuster had received several
medical bills from Frank, he sent a letter informing Frank that the statute of limitations had
passed and that he would not pay any more claims or expenses. Id. The First Court of
Appeals found these representations by the insurance adjuster were sufficient to create
a question of fact on equitable estoppel and to avoid summary judgment. Id.; see also
Cook, 673 S.W.2d at 235 (finding that, when adjuster told claimant medical bills would be
paid, fact issue raised as to whether adjuster falsely made those statements to induce
delay in filing suit).
          The issue in the instant case is unique. Here, the insurance company paid the
amount promised, but Hill claims she would have timely filed suit if not misled by the
insurance company's attorney. Hill claims she established an attorney-client relationship
with Lessert. She asserts that, while acting as her attorney, Lessert made
misrepresentations on which she relied to her detriment. In particular, she alleges Lessert
failed to disclose conflicts of interest, falsely promised she would receive the proceeds of
the settlement, and employed an unnecessary probate procedure.
          Equitable estoppel arises only in situations where one party has refused to do what
he or she has a duty to do. Harwell v. State Farm Mut. Auto. Ins. Co., 896 S.W.2d 170,
175 (Tex. 1995); Vrazel v. Skrabanek, 725 S.W.2d 709, 711 (Tex. 1987). If an attorney-client relationship existed between Lessert and Hill, Lessert would have had a duty to
disclose any conflicts of interest materially affecting that relationship. As an agent of
Bartlette and Texas Farmers, Lessert already had a duty to avoid making material
misrepresentations to Hill. See Vaughn v. Sturm-Hughes, 937 S.W.2d 106, 108 (Tex.
App.—Fort Worth 1996, writ denied). This is, therefore, a situation in which the doctrine
of equitable estoppel might be applied.
Failure to Disclose Conflicts of Interest
          Hill first contends equitable estoppel should be applied because Lessert failed to
disclose conflicts of interest. These conflicts allegedly arose when Lessert entered into an
attorney-client relationship with Hill. We reject this contention because we find no evidence
in the record that an attorney-client relationship was formed within the relevant time period.
          The events inducing a person to delay a particular action until after a particular date
logically must occur before that date. Thus, the only misrepresentations on which Hill
could have relied to her detriment must have occurred before December 26, 2001, the end
of the limitations period. See Vills. of Greenbriar, 874 S.W.2d at 264. 
          The record contains only one set of communications between Hill and a
representative of Bartlette or Texas Farmers that occurred before December 26, 2001.
Around November 2, 2001, Lessert contacted Hill by telephone and asked her to sign a
waiver of service in connection with the temporary administration. He then sent her a
letter, with the waiver of service enclosed, memorializing the telephone conversation. 
          The details of the telephone conversation are in dispute. In a deposition, Lessert
stated he told Hill he was representing Bartlette and Jerry, and wished to secure a release
on their behalf. In her deposition, Hill stated that, while she could not remember the
conversation, Lessert only told her he was representing Burleson's estate. She also stated
Lessert never told her he was representing Bartlette or Jerry. 
          The entire letter from Lessert to Hill reads:
Ms. Hill:
Please find enclosed an Affidavit stating you have no objection to Jo
Collinsworth being appointed Temporary Administrator of your daughter's
estate. Please take the time to review this document, and providing it meets
your approval, please sign it in front of a Notary Public, have your signature
notarized, and return it to me in the self-addressed stamped envelope also
enclosed for your convenience. As we discussed on the telephone, having
Jo appointed as Temporary Administrator will allow this proceeding to go far
more smoothly and quickly. Should you have any questions about this
document or any other matters, please do not hesitate to contact me.

                                                                Sincerely,

                                                                TODD G. LESSERT 

          The attorney-client relationship is purely contractual. It arises from the clear and
express agreement of the parties about the nature of the work to be done and the
compensation to be paid. This contract may be implied by the conduct of the two parties. 
It is necessary that the parties either explicitly or implicitly manifest an intention to create
an attorney-client relationship. Parker v. Carnahan, 772 S.W.2d 151, 156 (Tex.
App.—Texarkana 1989, writ denied).
          Hill stated in her deposition she believed Lessert was her attorney. However, there
was never any discussion of, or an agreement on, attorney's fees. There was never an
agreement on the nature of work Lessert would perform for Hill. Hill never asked Lessert
to represent her. Lessert never told Hill that he was her attorney. 
          Hill cites Vinson & Elkins v. Moran, 946 S.W.2d 381 (Tex. App.—Houston [14th
Dist.] 1997, writ dism'd by agr.), to support her contention that an attorney-client
relationship existed. The facts of that case are dissimilar to the facts presented here.
          In Moran, the executors of an estate hired the Vinson and Elkins law firm (V&E) to
advise them on matters relating to the estate administration. The court held there was
legally and factually sufficient evidence to find that, by its conduct, V&E had formed an
attorney-client relationship with the Moran beneficiaries of the estate. Id. at 405. 
          The estate beneficiaries attended meetings where V&E attorneys gave the
beneficiaries advice regarding taxes and tax consequences. The firm advised the
beneficiaries on no less than four distinct legal issues. The attorneys stated they
represented "the Moran family, the Moran Estate, the Moran Estate family, [and] Moran
Estate interests." The beneficiaries received several mailings directly from V&E. The
beneficiaries had "quite a number of contacts" with V&E attorneys. Further, the
beneficiaries were in effect paying V&E's legal fees. The firm's fees were paid out of the
expected distributions from the estate based on the pro rata share each beneficiary was
expected to receive. Id. at 403–04. 
          In contrast, Hill had only one contact with Lessert before December 26, 2001, a
single telephone call. She received only one mailing from Lessert, a letter memorializing
that call. Hill never paid any part of Lessert's legal fees, either directly or indirectly. 
Lessert never advised Hill on any legal matters, other than to ask her to sign a waiver of
service. The number and nature of the interactions in this case are different from those
in Moran.
          There is no evidence in the record raising a genuine issue of material fact about
whether an attorney-client relationship existed between Hill and Lessert before
December 26, 2001. Hill's mistaken impression Lessert was her attorney is not sufficient
by itself to create an attorney-client relationship. Because there was no attorney-client
relationship, there was no conflict of interest concerning such a relationship that Lessert
was required to disclose. Hill has, therefore, failed to raise an issue of material fact with
respect to all the elements of equitable estoppel. 
Failure To Receive Settlement Proceeds
          Hill alleges that, when Lessert contacted her in November 2001, he told her she
would receive all the settlement proceeds. Hill claims she did not receive any of those
proceeds. Because of this, she contends Lessert's statement was a false representation
that caused her to delay filing suit until after the limitations period.
          If Hill did not receive any of the money, it was because of a failed agreement
between Hill and her sister, Jo. There is no evidence in the record that Lessert knew or
could have known that a future agreement between Hill and Jo would fail and that Hill
would not get the settlement proceeds. Thus, Lessert did not have knowledge or the
means of knowledge that Hill would not get paid.
          Lessert could not have intended for Hill to rely on his false representation if he did
not know it was false. Therefore, with regard to this alleged misrepresentation, Hill has
failed to raise a genuine issue of material fact with respect to at least two elements of
equitable estoppel.
Necessity of Temporary Administration
          Hill contends a temporary administration was not necessary to complete the
settlement process. She asserts that either heirship affidavits or a dependent
administration could have been used. She contends the decision to use a temporary
administration to effectuate the settlement amounts to a misrepresentation.
          The decision to employ one particular legal process rather than another is a matter
of professional judgment. Even if that decision is not particularly astute, as Hill suggests,
it does not amount to a false representation. Hill has therefore failed to show that Lessert
made a false representation with regard to this allegation.
          Hill has failed to raise a genuine issue of material fact with respect to each element
of equitable estoppel. She therefore has not met her burden of proof in order to invoke the
doctrine of equitable estoppel to negate Bartlette's limitations defense. Accordingly, the
summary judgment was properly granted based on Bartlette's assertion of a statute of
limitations defense.
Accord and Satisfaction 
          Bartlette contends the settlement agreement constitutes an accord and satisfaction
on all claims, barring Hill's present lawsuit. Hill contends the settlement agreement does
not constitute an accord and satisfaction of her claims. She further contends the
settlement agreement is void because Jo did not have the authority to settle the wrongful
death and survival claims.
          The conditional tender of payment on a disputed or unliquidated claim may
constitute an accord and satisfaction. The general rule of law regarding the conditional
tender of payment element necessary to constitute an accord and satisfaction is that the
conditional tender must be expressed by acts or declarations with sufficient clarity so that
the creditor will know that his or her acceptance of the payment will constitute full payment
of the claim. H.L. "Brownie" Choate, Inc. v. Southland Drilling Co., 447 S.W.2d 676,
678–79 (Tex. 1969); see also Jenkins v. Henry C. Beck Co., 449 S.W.2d 454, 455 (Tex.
1969).
          We hold that the language of the settlement agreement was sufficient to constitute
an accord and satisfaction.


 The relevant language reads:
IT IS EXPRESSLY AGREED AND UNDERSTOOD that the
undersigned accepts the payment of the sums mentioned above as a full,
complete, final and binding compromise of all claims against the parties
released hereby, which involve disputed issues, regardless of whether too
much or too little may have been paid. It is expressly agreed and understood
that the acceptance of the sum mentioned above is in full ACCORD AND
SATISFACTION of a doubtful and disputed claim . . . .

          Hill contends the settlement agreement is void because an estate administrator
does not have the authority to settle a wrongful death claim. In contrast with a survival
claim, a wrongful death claim is an action that belongs to statutory beneficiaries and does
not benefit the estate. Palmer v. Coble Wall Trust Co., 851 S.W.2d 178, 181–82 (Tex.
1992). However, estate administrators have statutory authority to pursue wrongful death
actions on behalf of those beneficiaries if such beneficiaries have not done so on their own
behalf within three months after the death of the injured individual. Tex. Civ. Prac. & Rem.
Code Ann. § 71.004(c) (Vernon 1997).
          Hill next contends a temporary administrator does not have the authority to settle
claims or bring suit on behalf of an estate. Again, there is statutory authority for a
temporary administrator to do just that. The Probate Code authorizes the "personal
representative" of an estate to "[m]ake compromises or settlements in relation to property
or claims in dispute or litigation" on written application to the court. Tex. Prob. Code Ann.
§ 234(a)(4) (Vernon 2003).
          The Probate Code defines "personal representative" as "executor, independent
executor, administrator, independent administrator, temporary administrator, together with
their successors." Tex. Prob. Code Ann. § 3(aa) (Vernon 2003) (emphasis added).
          Hill also contends the probate court's order did not grant Jo the authority to settle
the survival and wrongful death claims. The Probate Code provides, "Temporary
administrators shall have and exercise only such rights and powers as are specifically
expressed in the order of the court appointing them . . . . Any acts performed by temporary
administrators that are not so expressly authorized shall be void." Tex. Prob. Code Ann.
§ 133 (Vernon 2003).
          The order appointing Jo as temporary administrator granted her the following
powers: "To represent the Estate and heirs of Randina Ray [sic] Burleson in all necessary
respects regarding any and all claims of the Estate and heirs against Chad Bartlett [sic] 
and Jerry Collinsworth, arising from an automobile accident on or about December 25,
1999." Hill contends this language did not grant Jo the authority to settle the wrongful
death and survival claims. We disagree.
          The order expressly grants the power to "represent the Estate and heirs of Randina
Ray [sic] Burleson in all necessary respects regarding any and all claims . . . ." We hold
that this language is sufficient to convey the power to assert and settle claims. Further, the
order specifically mentions the automobile accident that caused Burleson's death. We hold
this language is sufficiently specific to include the wrongful death and survival claims
arising out of the accident.
          Hill further contends a probate court does not have jurisdiction over wrongful death
and survival claims. In support of this, Hill cites Seay v. Hall, 677 S.W.2d 19 (Tex. 1984). 
In Seay, the Texas Supreme Court determined that the proper forum for such cases was
in the state district courts. Id. at 25. This holding was expressly overruled in Palmer, 851
S.W.2d at 181. In Palmer, the court recognized that the Legislature had amended the
Probate Code following the Seay decision to give probate courts jurisdiction over wrongful
death and survival claims. Id. at 182. 
          Hill finally contends the settlement agreement should not constitute an accord and
satisfaction on her claims because she did not sign the agreement and she did not receive
the settlement proceeds. As shown above, Jo had the authority to settle the claims on
Hill's behalf; Hill's signature was not necessary. Further, it is undisputed Jo received a
$25,000.00 check made payable to the temporary administrator of Burleson's estate. 
Whether she later distributed the proceeds of that check properly does not alter the nature
of the earlier valid settlement agreement.
          Jo had the authority to settle the present claims on Hill's behalf. She signed a
settlement agreement releasing Bartlette from these claims. In return, she received a
check in the amount of $25,000.00 as agreed in the settlement agreement. Accordingly,
we hold the summary judgment was proper because there has been an accord and
satisfaction on all claims, thereby barring the present lawsuit. 
Ratification
          Bartlette also sought summary judgment on the basis that, even if the settlement
agreement was voidable or fraudulent, Hill ratified the agreement through her subsequent
conduct. We have concluded that the settlement agreement was proper because it was
entered into by someone with the authority to do so. Hill was not fraudulently made a party
to that agreement. We therefore find it unnecessary to address Bartlette's ratification
argument.
Conclusion
          Summary judgment was properly based on Bartlette's statute of limitations defense
because Hill failed to raise a genuine issue of material fact as to each element of equitable
estoppel. Alternatively, summary judgment was proper because Bartlette proved as a
matter of law there was a valid settlement agreement constituting an accord and
satisfaction on all claims. 
          Accordingly, we affirm the judgment.



                                                                           Donald R. Ross
                                                                           Justice
 
 
CONCURRING OPINION

          I concur in the judgment of the Court because I agree with the analysis regarding
the statute of limitations. My concern is the statement in the opinion that the order granting
the temporary administrator the authority to represent the estate and heirs was sufficient
to give her the right to settle the claim. The Probate Code states: "[w]hen a personal
representative deems it for the interest of the estate, he may, upon written application to
the court, and by order granting authority . . . (4) [m]ake compromises or settlements in
relation to property or claims in dispute or litigation." Tex. Prob. Code Ann. § 234(a)(4)
(Vernon 2003) (emphasis added). There is no contention that the temporary administrator
filed an application requesting the probate court to approve the settlement or that the
probate court entered an order specifically authorizing the settlement. I agree that the
representative had, by court order, the authority to represent the estate and heirs of the
deceased in this case, but once she had negotiated a proposed settlement, she was
required to file a written application and to obtain an order from the probate court
authorizing her to settle the suit. 
 
                                                                           Jack Carter
                                                                           Justice

Date Submitted:      December 1, 2005
Date Decided:         December 20, 2005