

# NUMBER 13-12-00162-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ROSALVA RUIZ,                                                                            Appellant,

v.

CBL & ASSOCIATES PROPERTIES, INC.,                                    Appellee.

### On appeal from the 445th District Court
### of Cameron County, Texas.

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Garza and Vela
### Memorandum Opinion by Justice Garza

Appellant, Rosalva Ruiz, challenges the trial court's summary judgment in favor of appellee, CBL & Associates Properties, Inc. ("CBL"), in a contract dispute. We reverse and remand.

## I. BACKGROUND

CBL operates the Sunrise Mall in Brownsville, Texas. Ruiz assumed occupancy of an ice cream shop at the mall which had been originally leased to another tenant, who had defaulted. According to CBL, Ruiz never formally assumed the lease obligations of the prior tenant. In 2008, at the expiration of the prior tenant's lease, Ruiz and her father, Francisco Ruiz[1] (collectively referred to as "Ruiz"), signed a "License Agreement" providing for a one-year lease term. Ruiz executed another one-year "License Agreement" the following year, the term of which expired on December 31, 2010.

In November 2010, CBL sent Ruiz a letter demanding that she vacate the premises before the end of the calendar year. Ruiz then sued CBL, alleging causes of action of common law fraud, statutory fraud, breach of contract, deceptive trade practices, and breach of covenant of good faith and fair dealing. Ruiz alleged that she signed the "License Agreements" and provided certain financial documents to CBL only because CBL's leasing representative indicated to her that she would eventually be given a "long term lease." According to Ruiz, "[h]ad [CBL] not made representations about a permanent long term lease [Ruiz] would never have stayed in the mall because the business's profitability was too low." Ruiz requested punitive and exemplary damages, claiming that CBL's actions were "unconscionable" and "egregious."[2]

CBL filed its motion for summary judgment on December 12, 2011. The motion noted that the "License Agreements" are the only written agreements that exist between CBL and Ruiz. CBL also pointed to the following provisions contained in the both of the

---

[1] Francisco Ruiz is not a party to the underlying lawsuit or this appeal.

[2] Ruiz also requested an injunction enjoining CBL from evicting Ruiz. The trial court granted a temporary restraining order upon the filing of Ruiz's petition but rendered an order denying Ruiz's request for a temporary injunction on January 19, 2011.

agreements:

> It is understood and agreed that this Agreement is, and is intended to be a License, granting the Licensee [Ruiz] permission to engage in certain acts upon the Licensor's [CBL's] premises, subject to the terms, conditions and limitations set forth herein. Licensor does not grant Licensee any permanent interest in Licensor's premises, land, building or other realty whatsoever, nor shall any other relationship between the parties, including, but not limited to that of landlord and tenant be implied or created by virtue of this Agreement.

> . . . .

> 19. **Terms of Agreement:** This License contains all the covenants, promises, agreements, conditions, and understandings between Licensor and Licensee. There are no other, either oral or written, between them other than those set forth in this License.

CBL argued in its summary judgment motion that, "[b]y signing the two License Agreements, [Ruiz] specifically acknowledged that there were no other agreements, either oral or in writing, governing her relationship with [CBL]" and that CBL is entitled to judgment as a matter of law because "[e]ach of [Ruiz]'s causes of action is based on supposed oral agreements between [Ruiz] and [CBL]."

After CBL filed its summary judgment motion, Ruiz filed an amended petition which contained the following new factual allegations:

> [D]uring the period [Ruiz] operated her business, [CBL] violated, first, the existing written lease that [Ruiz] had assumed with [CBL]'s full knowledge and approval, second oral representations made by [CBL], and third even the temporary "license" documents which [Ruiz] had signed upon [CBL]'s representations that such documents were required as "liability protection" for the mall. [CBL] wrongfully prohibited [Ruiz] from selling certain items specifically authorized by all relevant document terms and oral promises. As a result of such wrongful conduct [Ruiz] lost significant income. Aggravating the impact of such wrongful conduct, [CBL] allowed new kiosks or carts to be located close to [Ruiz]'s business and which sold products [CBL] had wrongfully prohibited [Ruiz] from selling. Additionally, when [Ruiz] suggested that she was going to sell a new snack item for which there was a new and clear Mexican National market, [CBL] wrongfully prohibited such sale and, mysteriously, immediately thereafter

3

another mall tenant . . . began selling the same product [Ruiz] had sought to sell.

Ruiz then filed a response to CBL's motion for summary judgment, arguing in part that CBL did not address Ruiz's newly-pleaded allegations that CBL had breached the "License Agreements" and the prior lease. An excerpt from deposition testimony by Ruiz was attached to her response. On December 29, 2011, CBL filed a motion to strike the response and the deposition excerpt, noting that it was not verified. The trial court did not rule on the motion to strike.[3] However, after a hearing on January 12, 2012,[4] the trial court granted CBL's motion for summary judgment on February 9, 2012, ruling that all of Ruiz's claims be dismissed in their entirety with prejudice. This appeal followed.

## II. DISCUSSION

CBL's motion for summary judgment does not state whether it was brought on traditional or no-evidence grounds.[5] However, the motion is based entirely on the language contained in the "License Agreements," which were attached by CBL to its motion as summary judgment evidence.[6] Moreover, CBL does not specify which

---

[3] CBL does not complain on appeal about the trial court's failure to rule on this motion.

[4] On December 14, 2011, the trial court rendered an "Order Setting Hearing on Defendant's First Motion for Summary Judgment," purportedly setting a hearing on the motion for January 12, 2012. However, the record before this Court contains no transcript of any such hearing, and the parties make no reference to any such hearing in their appellate briefs. We note, in any event, that no oral testimony may be taken at a traditional summary judgment hearing. TEX. R. CIV. P. 166a(c). Therefore, our ordinary rule—that, in the absence of findings of fact or a reporter's record, we will assume that the trial court heard evidence sufficient to support the judgment, *see, e.g., Public, Inc. v. County of Galveston*, 264 S.W.3d 338, 341–42 (Tex. App.—Houston [14th Dist.] 2008, no pet.)—does not apply here.

[5] A footer on each page of the motion states: "Defendant's First No-Evidence Motion for Summary Judgment." However, no reference to traditional or no-evidence grounds was stated in the body of the motion.

[6] The Texas Supreme Court has expressly rejected the notion that, "if a party attaches evidence to a motion for summary judgment, any request for summary judgment under Rule 166a(i) [regarding no-

4

elements of Ruiz's various causes of action, if any, it believes lack evidentiary support. *See* TEX. R. CIV. P. 166a(i) (stating that a no-evidence motion "must state the elements as to which there is no evidence"). We therefore construe the motion as asserting traditional grounds for summary judgment only. *See Michael v. Dyke*, 41 S.W.3d 746, 752 (Tex. App.—Corpus Christi 2001, no pet.) (treating an ambiguous summary judgment motion as traditional in part because the motion "fails to follow rule 166a(i) precisely by identifying the particular elements in dispute" and "attaches evidence that would be appropriate for a traditional motion, but not a no-evidence motion")[7]; *see also*

---

evidence motions for summary judgment] will be disregarded." *Binur v. Jacobo*, 135 S.W.3d 646, 650–51 (Tex. 2004). However, to properly raise no-evidence grounds, a party still must assert in the motion that there was no evidence of a particular element. *See id.* at 651 (concluding that the appellate court erred in disregarding no-evidence grounds because, even though evidence was attached to the motion, the motion stated that "there was no evidence of proximate cause"); *see also* TEX. R. CIV. P. 166a(i). Here, CBL's motion did not state that there was "no evidence" of any particular element of Ruiz's causes of action.

[7] As we stated in *Michael v. Dyke*:

The distinction between a traditional and a no-evidence summary judgment is critical. The burden on a movant seeking summary judgment on traditional grounds is great. The movant must conclusively establish that no genuine issue of material fact exists and that the movant is, therefore, entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). A summary judgment motion must stand on its own merits. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). Even in the absence of a response from the nonmovant, in order to be entitled to judgment, "the movant still must establish his entitlement to a summary judgment on the issues expressly presented to the trial court by conclusively proving all essential elements of his cause of action or defense as a matter of law." *Id.* Or, . . . a defendant may show entitlement to judgment by conclusively negating an essential element of the plaintiff's cause of action. *See Wornick Co. v. Casas*, 856 S.W.2d 732, 733 (Tex. 1993).

In contrast, rule 166a(i) allows a party to move for a no-evidence summary judgment on the ground that no evidence exists of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. TEX. R. CIV. P. 166a(i). The rule specifically states that "the motion must state the elements as to which there is no evidence." *Id.* If a response is not filed producing evidence that raises a genuine issue of fact on the disputed element, rule 166a(i) clearly states that the motion "must be granted." *Id.* There is no need for the party seeking judgment to attach any evidence to his motion. If the respondent fails to produce evidence, the judgment will be granted; if the respondent succeeds in producing evidence, it will not. *Id.*

. . . .

5

*J.M.K. 6, Inc. v. Gregg & Gregg, P.C.*, 192 S.W.3d 189, 195 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (treating ambiguous summary judgment motion as traditional because the motion failed to specify whether it was brought under traditional or no-evidence grounds, thus providing non-movant with insufficient notice that movant sought no-evidence summary judgment).

## A.    Standard of Review

We review the granting of a traditional motion for summary judgment de novo. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003); *Branton v. Wood*, 100 S.W.3d 645, 646 (Tex. App.—Corpus Christi 2003, no pet.). In our review, we determine whether the movant met its burden to establish that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). The movant bears the burden of proof and all doubts about the existence of a genuine issue of material fact are resolved against the movant. *See Sw. Elec. Power Co.*, 73 S.W.3d at 215. We take as true all evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

We will affirm a traditional summary judgment only if the record establishes that the movant has conclusively proved its defense as a matter of law or if the movant has negated at least one essential element of the plaintiff's cause of action. *IHS Cedars*

---

When it is not readily apparent to the trial court that summary judgment is sought under rule 166a(i), the court should presume that it is filed under the traditional summary judgment rule and analyze it according to those well-recognized standards.

41 S.W.3d 746, 750–51 (Tex. App.—Corpus Christi 2001, no pet.).

*Treatment Ctr. of Desoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004). A matter is conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005).

**B.     Analysis**

On appeal, CBL argues that "all of Ruiz's causes of action become moot" in light of the fact that Ruiz executed the "License Agreements," which both included, in section 19, an express disavowal of any concurrent oral agreements between the parties. CBL further claims that:

> There can be no fraud (statutory or common-law), breach of contract, deceptive trade practices, or a breach of the covenant of good faith and fair dealing because the relationship between the parties was governed by these licensure agreements and CBL acted accordingly. The License Agreement stated that Ruiz was to move out of the space by a certain date and CBL asked Ruiz to do just that. There can be no violation if CBL was merely following the License Agreements. Ruiz has offered no proof beyond unsubstantiated factual allegations that would say otherwise.

This statement, made in CBL's appellate brief, betrays a belief that Ruiz was under a burden to produce evidence supporting her causes of action simply because CBL had produced evidence establishing that she executed the "License Agreements." That is not necessarily the case. Only if the movant has produced sufficient evidence to establish its right to judgment as a matter of law does the burden shift to the non-movant to come forward with competent controverting evidence raising a genuine issue of material fact with regard to the element challenged by the defendant. *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999).

7

The only evidence attached to CBL's summary judgment motion were the two "License Agreements" executed by the parties in 2008 and 2009.[8] The agreements were accompanied by an affidavit authored by Cesar R. Briseno Jr., general manager of Sunrise Mall, which verified the authenticity of the agreements and stated in part that "These are the only signed contracts of any nature relating to Ms. Ruiz's rental of the leased space at the Sunrise Mall." Briseno also affirmed the truth of the facts stated in the summary judgment motion. Accordingly, we must first determine whether this evidence established CBL's right to judgment as a matter of law with respect to each of Ruiz's causes of action. *See id.* Only if CBL has established its right to judgment as a matter of law with respect to a particular cause of action will we consider whether Ruiz raised a genuine issue of material fact relative thereto. *See id.*

Before we undertake this analysis, we note, as set forth above, that Ruiz amended her petition to add new factual allegations after CBL filed its summary judgment motion. Specifically, Ruiz added allegations, not contained in any prior pleading, that CBL had: (1) breached the prior tenant's lease, the rights pertaining to which Ruiz claims she legally assumed; and (2) breached the "License Agreements" by prohibiting her from selling certain items at her shop. This amendment was made without leave of court. CBL did not amend or supplement its motion to address the allegations. It is well-established that, once the trial court has conducted a summary judgment hearing, a party may not file an amended pleading unless that party first obtains leave of court. *See Mobil Producing Tex. & N.M., Inc. v. Cantor*, 93 S.W.3d 916, 921 (Tex. App.—Corpus Christi 2002, no pet); *Hussong v. Schwan's Sales Enters.,*

---

[8] The copy of the 2008 "License Agreement" contained in the clerk's record does not contain a signature page. Nevertheless, Ruiz does not dispute that she duly executed both "License Agreements."

8

*Inc.*, 896 S.W.2d 320, 323 (Tex. App.—Houston [1st Dist.] 1995, no writ); *Leinen v. Burrington's Bayou City Serv. Co.*, 824 S.W.2d 682, 685 (Tex. App.—Houston [14th Dist.] 1992, no writ). However, in this case, the record reflects that Ruiz filed her amended petition on December 29, 2011, some two weeks prior to the summary judgment hearing on January 12, 2012. CBL cites no authority, and we find none, stating that a plaintiff may not amend her pleadings without leave of court after a defendant has filed a motion for summary judgment. *See* TEX. R. CIV. P. 63. The amended petition was therefore properly before the trial court and was Ruiz's live pleading at the time of the summary judgment hearing and rendition. Accordingly, we will consider Ruiz's new factual allegations in our analysis.

### 1. Common Law Fraud

The elements[9] of common-law fraud are that: (1) a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the representation was made with the intention that it be acted upon by the other party; (5) the party acted in reliance upon the representation; and (6) the party suffered injury. *Johnson & Higgins v. Kenneco Energy*, 962 S.W.2d 507, 524 (Tex. 1998).

CBL's summary judgment evidence does not conclusively negate any of these elements. It is true that Ruiz executed two documents which state that "[t]here are no other [covenants, promises, agreements, conditions, or understandings] between [Ruiz and CBL] other than those set forth in this License." However, this fact does not negate

---

[9] We note, with some dismay, that neither party has articulated any of the elements of any of Ruiz's causes of action, either in their original pleadings, their summary judgment pleadings, or their appellate briefs.

9

the allegation that CBL made a false representation, wholly apart from the "License Agreements," upon which it intended Ruiz to act. Specifically, it does not negate the allegation that CBL fraudulently induced Ruiz to sign the agreements.

Moreover, to the extent CBL implicitly argues that Ruiz's execution of the "License Agreements" served as a waiver of any fraud claims she may have against CBL, or that she is estopped from asserting such a claim, those are affirmative defenses which CBL did not explicitly raise in its live pleading or its summary judgment motion. *See* TEX. R. CIV. P. 94 (stating that "[i]n pleading to a preceding pleading, a party shall set forth affirmatively" the defenses of, inter alia, waiver and estoppel). Accordingly, the trial court could not have awarded summary judgment on that basis. *See City of Houston*, 589 S.W.2d at 677 (holding that a trial court may not grant summary judgment on grounds not presented by the movant in writing); *see also* TEX. R. CIV. P. 166a(c) (requiring a trial court to grant summary judgment only if "the moving party is entitled to judgment as a matter of law on the issues *expressly set out in the motion or in an answer or any other response*") (emphasis added).

### 2. Statutory Fraud

Ruiz did not specify the statute under which her "statutory fraud" claim was brought. However, the Texas Business and Commerce Code provides a statutory fraud cause of action for false promises made in the context of a real estate or stock transaction. *See* TEX. BUS. & COM. CODE ANN. § 27.01(a)(2) (West 2009). Under that statute, a plaintiff claiming to have suffered damages as a result of a false promise, as Ruiz does here, must establish that the underlying transaction involved a real estate transaction or stock transaction and that the false promise was: (1) material; (2) made

10

with the intention of not fulfilling it; (3) made to a person for the purpose of inducing that person to enter into a contract; and (4) relied on by that person in entering into that contract. *Id.* Ruiz, in her petition, alleged that CBL falsely promised to grant her a long-term lease. Therefore, we construe her statutory fraud claim as being brought under section 27.01.

We find that CBL's summary judgment evidence was sufficient to negate the statutory fraud cause of action. Briseno's affidavit stated that the facts contained in the "License Agreements" were true and correct based upon his personal knowledge. Among the facts stated in the "License Agreements" was that "[t]here are no other [covenants, promises, agreements, conditions, or understandings], either oral or written, between [CBL and Ruiz] other than those set forth in this License." This negates Ruiz's allegation that CBL made a false promise to her.

We must next determine whether Ruiz met her burden to create a fact issue. *See Rhone-Poulenc, Inc.*, 997 S.W.2d at 223. Ruiz's response to the summary judgment motion included two pages excerpted from a transcript of her deposition testimony, in which Ruiz states: "CBL promised me a long-term lease with the same contract that the previous owner had, where I was in the suite, and all I had to do was sign. I turned in our documentations, and they never gave me the actual contract to sign." This deposition testimony created a genuine issue of material fact as to whether CBL made a false promise under section 27.01.

CBL argues that the two pages of deposition testimony provided in Ruiz's response do not constitute summary judgment evidence because they were not

11

authenticated.[10]  We disagree.  The Texas Supreme Court has held that "deposition excerpts submitted as summary judgment evidence need not be authenticated" because "Rule 166a(d) supersedes any authentication requirement."  *McConathy v. McConathy*, 869 S.W.2d 341, 341–42 (Tex. 1994).  Rule 166a(d) provides:

> Discovery products not on file with the clerk may be used as summary judgment evidence if copies of the material, appendices containing the evidence, or a notice containing specific references to the discovery or specific references to other instruments, are filed and served on all parties together with a statement of intent to use the specified discovery as summary judgment proofs:  (i) at least twenty-one days before the hearing if such proofs are to be used to support the summary judgment; or (ii) at least seven days before the hearing if such proofs are to be used to oppose the summary judgment.

TEX. R. CIV. P. 166a(d).  The requirement that parties provide a "statement of intent" to use unfiled discovery as summary judgment proof "is satisfied where the discovery is attached to a summary judgment motion or response and the motion or response clearly relies on the attached discovery as support."  *McConathy*, 869 S.W.2d at 342 n.2.  Here, Ruiz's response to the summary judgment motion was filed on December 29, 2011, which was more than seven days before the hearing on January 12, 2012. The response clearly referred to the attached deposition excerpt.  Accordingly, the deposition excerpt constituted valid summary judgment evidence.  Because that evidence created a fact issue as to whether CBL made a false promise to Ruiz, the trial court erred in granting summary judgment on Ruiz's statutory fraud claim.

### 3. Breach of Contract

To recover for breach of contract, a plaintiff must show:  (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of

---

[10] Ruiz's response to the summary judgment motion did not include an affidavit certifying the deposition excerpt's authenticity, nor did it contain a court reporter's certificate.

12

the contract by the defendant; and (4) damages resulting from that breach. *Adams v. H & H Meat Prods., Inc.*, 41 S.W.3d 762, 771 (Tex. App.—Corpus Christi 2001, no pet.); *Pegasus Energy Group, Inc. v. Cheyenne Petroleum Co.*, 3 S.W.3d 112, 127 (Tex. App.—Corpus Christi 1999, pet. denied).

Ruiz's amended petition contains three discrete allegations of breach of contract: (1) that CBL breached the written lease which originally applied to the prior tenant but which Ruiz contends she legally assumed; (2) that CBL breached the "License Agreement" in prohibiting her from selling certain items; and (3) that CBL breached an alleged oral agreement regarding a long-term lease. CBL's summary judgment motion attacks only the third allegation. Accordingly, the trial court erred in granting summary judgment as to the first two allegations. *See City of Houston*, 589 S.W.2d at 677.

As to Ruiz's claim for breach of oral contract, we find that CBL's summary judgment evidence negated that cause of action. Again, Briseno's affidavit affirmed that "[t]here are no other [covenants, promises, agreements, conditions, or understandings], either oral or written, between [CBL and Ruiz] other than those set forth in this License." This negates the first element of breach of contract—i.e., the existence of a valid contract—with respect to Ruiz's oral contract claim. *See Adams*, 41 S.W.3d at 771. However, as we previously determined with respect to the statutory fraud claim, Ruiz's summary judgment evidence was sufficient to create a fact issue as to whether CBL entered into an oral agreement with Ruiz to provide her with a long-term lease.

CBL nevertheless asserts on appeal that it established its right to judgment as a matter of law on the breach of oral contract claim because an oral contract for a lease of real estate for a term longer than one year is unenforceable under the statute of frauds.

13

*See* TEX. BUS. & COM. CODE ANN. § 26.01(a), (b)(5) (West 2009). This argument is not persuasive. The statute of frauds defense could not have been a proper basis for the trial court's judgment because, while the defense was raised in CBL's answer, it was not asserted in the summary judgment motion. *See City of Houston*, 589 S.W.2d at 677.

We conclude that the trial court erred in granting summary judgment on Ruiz's breach of oral contract claim.

### 4. Deceptive Trade Practices

The Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA") provides as follows:

> A consumer may maintain an action where any of the following constitute a producing cause of economic damages or damages for mental anguish:
>
> > (1)  the use or employment by any person of a false, misleading, or deceptive act or practice that is:
> >
> > > (A)  specifically enumerated in a subdivision of Subsection (b) of Section 17.46 of this subchapter; and
> > >
> > > (B)  relied on by a consumer to the consumer's detriment;
> >
> > (2)  breach of an express or implied warranty;
> >
> > (3)  any unconscionable action or course of action by any person; or
> >
> > (4)  the use or employment by any person of an act or practice in violation of Chapter 541, Insurance Code.

TEX. BUS. & COM. CODE ANN. § 17.50(a) (West 2011). Ruiz did not state the specific grounds for her DTPA claim, but we note that her petition did not make any allegation that CBL either: (1) committed any act or practice enumerated in subsection 17.46(b); (2) breached any express or implied warranty; or (3) violated chapter 541 of the insurance code. On the other hand, her petition did state that CBL's action in evicting

14

her constituted an "unconscionable" action. Accordingly, we will construe the petition as asserting a DTPA claim under subsection (a)(3) of section 17.50 only. *See id.*

To establish a claim under subsection (a)(3), a plaintiff must show: (1) the plaintiff is a consumer; (2) the defendant committed an unconscionable action or course of action; (3) the plaintiff suffered damages; and (4) the defendant's unconscionable action or course of action was the producing cause of those damages. *Id.* § 17.50(a)(3). A "consumer" is any "individual, partnership, corporation, this state, or a subdivision or agency of this state who seeks or acquires by purchase or lease, any goods or services . . . ." *Id.* § 17.45(4). "Goods" means "tangible chattels or real property purchased or leased for use." *Id.* § 17.45(1). An "unconscionable action or course of action" is "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." *Id.* § 17.45(5).

CBL's summary judgment evidence—that is, the two "License Agreements" along with Briseno's affidavit—does not conclusively negate any of the elements under subsection (a)(3) of section 17.50. In particular, that evidence fails to negate that Ruiz was a "consumer" for DTPA purposes; it fails to negate that CBL, in falsely representing to Ruiz that it would grant her a long-term lease, as she alleged, took "advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree," *see id.*; or that Ruiz suffered damages as a result of CBL's action.[11] The trial court therefore erred in granting summary judgment on this claim.

---

[11] A DTPA claimant seeking actual damages must provide sixty days' notice to the defendant before filing suit. TEX. BUS. & COM. CODE ANN. § 17.505(a) (West 2011). Ruiz generally alleged in her petition that "all conditions precedent have been met or have occurred" but did not specifically state that the sixty-day notice requirement was satisfied. In any event, even assuming Ruiz failed to satisfy this

### 5. Breach of Covenant of Good Faith and Fair Dealing

Finally, Ruiz alleged a claim of breach of the covenant of good faith and fair dealing in her petition. The Texas Supreme Court has specifically rejected the notion that a general duty of good faith and fair dealing is implied in all contracts. *City of Midland v. O'Bryant*, 18 S.W.3d 209, 215 (Tex. 2000) (citing *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 595 n.5 (Tex. 1992)); *Great Am. Ins. Co. v. North Austin Mun. Util. Dist. No. 1*, 908 S.W.2d 415, 418 (Tex. 1995). Such a duty may be implied, however, when there is a "special relationship" between the contracting parties, such as insurer-insured. *Arnold v. Nat'l County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987). A "special relationship" is one "where there is unequal bargaining power between the parties and a risk exists that one of the parties may take advantage of the other based upon the imbalance of power." *Laredo Med. Group v. Lightner*, 153 S.W.3d 70, 72–73 (Tex. App.—San Antonio 2004, pet. denied).

Ruiz did not cite any authority, at the trial court or on appeal, establishing that a lessor-lessee or licensor-licensee relationship is a "special relationship" such as would give rise to a duty of good faith and fair dealing. Crucially, however, CBL did not argue, at the trial court or on appeal, that such a duty does *not* exist. Instead, CBL's motion for summary judgment merely contends that all of Ruiz's claims must be dismissed because she executed the "License Agreements." The trial court could not have properly granted summary judgment on this claim on the basis that no duty existed, because CBL did not make that argument at any time, either to the trial court or to this Court. *See City of Houston*, 589 S.W.2d at 677; *see also* Tᴇx. R. Cɪv. P. 166a(c).

---

requirement, that could not have served as a proper basis for summary judgment on Ruiz's DTPA claim because CBL never raised it. *See City of Houston*, 589 S.W.2d at 677.

16

Moreover, CBL's summary judgment evidence does not negate the contention that, if such a duty did exist in this case, CBL breached it by falsely representing to Ruiz that it would grant her a long-term lease. The trial court erred in granting summary judgment on this claim.

### III. CONCLUSION

We reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.


DORI CONTRERAS GARZA
Justice

Delivered and filed the
20th day of September, 2012.

17